Opinion
 

 CHIN, J.
 

 We granted review to determine whether comprehensive liability insurers who insure only for tangible property losses owe a duty to defend in a dispute involving the right to use an implied easement. Case law and treatises have always acknowledged that actions over easement ownership, interference, or the right to use an easement concern “pure rights in property” or intangible rights only. (See
 
 Gunderson v. Fire Ins. Exchange
 
 (1995)
 
 *875
 
 37 Cal.App.4th 1106, 1109 [44 Cal.Rptr.2d 272] (Gunderson); see also 6 Miller & Starr, Cal. Real Estate (3d ed. 2000) Easements, §§ 15:1, 15:5, pp. 4, 16.)
 

 In line with
 
 Gunderson,
 
 we conclude, in contrast to the Court of Appeal, that an insurer providing a liability policy that covers damage to tangible property on the insured’s premises has no duty to defend an easement dispute. For reasons explained below, we therefore reverse the Court of Appeal judgment and remand the matter for proceedings consistent with this conclusion.
 

 I. Facts and Procedural History
 

 Plaintiffs Zubair M. Kazi and Khatija Kazi (the Kazis) purchased land (Parcel A) from the State of California’s Santa Monica Mountains Conservancy (Conservancy). C. David Tollakson and Lynn L. Tollakson (the Tollaksons) also purchased Conservancy land (Parcel B). In an informational booklet, the Conservancy informed prospective buyers that Parcels A and B shared a common driveway 20 feet in width that straddled the boundary line between the two parcels. The deeds made no reference to any express easement for a common driveway. When the Tollaksons bought Parcel B, however, they relied on the representations made in the informational booklet to assume an implied easement existed on Parcel A for a “common driveway, for ingress, egress, and a right of way over and across Parcel A, parallel to the Boundary Line and for a width of not less than ten feet, all of which is appurtenant to Parcel B . . . .”
 

 In order to facilitate building on their property, the Kazis graded an access road on Parcel A, at or near the boundary line of Parcel B. Although the access road did not involve Parcel B, the Tollaksons complained to the Kazis that the grading interfered with their claimed implied easement and right-of-way over the Kazis’ parcel, effectively ousting them from use and possession of their own Parcel B. When the Kazis denied the existence of an implied easement over Parcel A, the Tollaksons sued them in May 1990.
 

 The Tollaksons’ complaint against the Kazis asserted causes of action for (1) declaratory and injunctive relief, (2) quiet title, (3) trespass to the common driveway easement, and (4) ejectment from the common driveway easement. Each cause of action essentially alleged that the Kazis’ access road obstructed the Tollaksons’ alleged implied easement over Parcel A. The complaint specifically noted that the entire dispute concerned the “right of way over and across Parcel A, parallel to the Boundary Line and for a width of not less than ten feet, all of which is appurtenant to Parcel B . . . .”
 

 
 *876
 
 The Tollaksons also alleged in their complaint that they purchased their parcel from the Conservancy with the understanding that each parcel would be served by a common driveway straddling the property boundary line. They admitted, however, that the Conservancy never conveyed to them or to the Kazis any deed for an express easement in the common driveway. The Tollaksons complained that the Kazis “denied the existence of an easement” over their parcel for purposes of the common driveway, and that they “have been grading and constructing on Parcel A in contravention of the existence of such common driveway easement and have obstructed the same, denying [the Tollaksons] the benefits of such easement.” The complaint alleged no physical damage to either parcel, but essentially asserted that the Tollaksons would not have purchased Parcel B without the easement over Parcel A for the common driveway because without it, Parcel B was not buildable.
 

 The trespass claim sought $4,000 per month in damages and alleged that interference with the alleged implied easement diminished Parcel B’s value by $400,000. The ejectment claim sought payment of $4,000 per month in damages for obstructing the easement. The Kazis denied the existence of an implied easement over Parcel A and refused to acknowledge any access interference.
 

 In August 1990, the Kazis tendered defense of the Tollaksons’ complaint to their liability insurance carriers, defendants Farmers Insurance Exchange (Farmers), the primary insurance carrier, State Farm Fire and Casualty Company (State Farm), and Truck Insurance Exchange (Truck). These policies covered property damage and personal injury, which included a duty to defend and indemnify the Kazis in an underlying lawsuit involving third party property damage or personal injury. Farmers insured the Kazis under a Farmers E-Z-Reader Car Policy that included a “Comprehensive Personal Liability Insurance Endorsement” providing liability coverage for “damages which an insured becomes legally obligated to pay because of . . . property damage resulting from an occurrence to which this coverage applies.” The policy defined property damage as “physical injury to or destruction of tangible property, including loss of its use.” The insurers did not intend these policies to cover disputes involving claims over intangible property rights.
 

 The Truck personal umbrella policy provided coverage for “damages that you must pay . . . because of personal injury . . . covered by this policy; [and] reasonable expenses that you incur in the investigation, defense and settlement of a claim or suit because of personal injury or property damage covered by this policy . . . .” The policy defined personal injury to mean, in pertinent part, “injury arising out of. . . [*[[] . . . wrongful entry or eviction, or other invasion of ... a person’s right of private occupancy . ... HQ
 
 *877
 
 Property damage means damage to or loss of use of tangible property.” The State Farm homeowners liability insurance policy defined property damage to mean “physical damage to or destruction of tangible property, including loss of use of this property.” The policy’s “loss of use” provision covered payment to maintain the insureds’ own standard of living if the insured loss rendered the insureds’ “residence premises” uninhabitable.
 

 Before the insurers responded to the demand for a defense, the Kazis settled the Tollakson action on the eve of trial in November 1990. As part of the settlement, the parties agreed that the mutual common driveway alleged in the complaint did not exist. Instead the Kazis agreed to record a deeded easement in a portion of Parcel A to enable the Tollaksons to construct and maintain a separate driveway on Parcel B. The settlement agreement also gave the Kazis an option, at the Tollaksons’ expense, to “process a lot line adjustment” so that the easement the Kazis granted to the Tollaksons would become part of Parcel B. Following the settlement, State Farm reimbursed the Kazis for the fees and costs it found reasonably attributable to the six-month defense and settlement.
 

 Not satisfied with the reimbursement, the Kazis filed the present bad faith action against their insurers, suing them for breach of contract, breach of the duty of good faith and fair dealing, and negligent handling of their claim. The insurers’ answer to the complaint asserted that they had no duty to defend or indemnify the Kazis in the underlying Tollakson lawsuit because it involved an easement dispute and their policies did not cover intangible property actions. Truck and Farmers also cross-complained against the Kazis in declaratory relief, seeking a declaration that they had no duty to defend the Kazis, that their policies provided no coverage for the Tollaksons’ claims, and that they had no duty to indemnify the Kazis for their costs.
 

 The trial court granted State Farm’s motion to sever the issues and try first the duty to defend question. It ruled in the insurers’ favor, finding that because the easement dispute involved intangible property rights only, and no physical damage or occurrence on the Tollaksons’ property, the com.plaint on its face did not trigger the duty to defend. The court added that the Tollaksons’ complaint did not allege any claim for tangible property damage to Parcel B, and they therefore were not seeking the type of damages that were potentially covered under the liability insurance policies. It therefore granted the insurers’ motion for nonsuit, concluding that they “had no duty to defend the Kazis in the Tollakson action because there was no potential for coverage under any of the policies for personal injury or property damage.” Based on its coverage conclusion, the court found no breach of contract and no breach of the duty of good faith and fair dealing.
 

 
 *878
 
 The Court of Appeal reversed the trial court judgment. It acknowledged that easement rights are “referred to as ‘intangible’ rights,” but stated that was not the case in insurance contracts. The court observed that an easement holder may not “be able to see, hear, smell or touch [his] ‘right,’ ” but concluded that an insured can physically transform an alleged implied easement from an intangible piece of property to a tangible form by obstructing access to it, or grading it, as the Kazis did here. The court held that the insurers had a duty to defend the Kazis against the Tollakson action because the Kazis’ grading and paving a driveway on their own property, allegedly subject to an implied easement, amounted to more than a loss of use claim; it constituted property damage to tangible property under each of the Kazis’ liability policies.
 

 In disagreeing with the trial court’s interpretation of the complaint, the Court of Appeal also concluded “that the Tollakson complaint against the insureds may be read to allege damage to Parcel B, owned in fee simple by the Tollaksons, and on this basis also gave rise to a duty to defend under [the Kazis’] insurance policies.” In other words, the Court of Appeal believed the complaint alleged physical damage to Parcel B, in addition to obstruction of an implied easement over Parcel A.
 

 In justifying its conclusion, the Court of Appeal purported to distinguish
 
 Gunderson,
 
 which held that obstruction and loss of use of an alleged easement that reduced property value were not covered under a liability insurance policy’s property damage provision.
 
 (Gunderson, supra,
 
 37 Cal.App.4th at p. 1109.) The Court of Appeal distinguished
 
 Gunderson
 
 on the ground that the plaintiff there sought only to quiet title in fee simple and did not allege the right to use and enjoy an easement. The court noted that the
 
 Gunderson
 
 complaint “alleged nonphysical injuries, and did not allege any physical injury to or destruction of [the plaintiff’s] property . . . .” We granted review to decide whether liability insurance policies that cover only tangible property loss could ever give rise to a duty to defend in a dispute involving intangible property rights, and whether the Court of Appeal’s conclusion that they could conflicts with
 
 Gunderson, supra,
 
 37 Cal.App.4th at page 1109.
 

 II. Discussion
 

 A.
 
 An Insurer’s Duty to Defend Claim for Loss to Intangible Property
 

 A standard general liability insurer has a duty to defend and indemnify for a loss to tangible property only. The property loss section of these policies provides coverage for physical injury, loss, or destruction of
 
 *879
 
 tangible property, and the focus of the property damage coverage is the property itself.
 
 (Waller v. Truck Ins. Exchange, Inc.
 
 (1995) 11 Cal.4th 1, 17 [44 Cal.Rptr.2d 370, 900 P.2d 619]
 
 (Waller).)
 
 For our purposes, it is important to note that the policies are not intended to cover intangible property losses, including loss of an investment, loss of goodwill or loss of intangible property use.
 
 (Id.
 
 at pp. 17-18;
 
 Gunderson, supra,
 
 37 Cal.App.4th at p. 1109.) Our inquiry here is limited to the Kazis’ claim, as stated in their action against the insurers, that the insurers owed a duty to defend them in the Tollakson action and acted in bad faith in refusing to do so.
 
 [1]
 

 We have consistently observed that insurance companies must defend insureds for actions that give rise to a potential for indemnity.
 
 (Gray
 
 v.
 
 Zurich Insurance Co.
 
 (1966) 65 Cal.2d 263, 275 [54 Cal.Rptr. 104, 419 P.2d 168]
 
 (Gray).)
 
 We have recognized insureds’ expectations that they have the “right to call on the insurer’s superior resources for the defense of third party claims.”
 
 (Montrose Chemical Corp. v. Superior Court
 
 (1993) 6 Cal.4th 287, 295 [24 Cal.Rptr.2d 467, 861 P.2d 1153]
 
 (Montrose).)
 
 Moreover, the insurers’ duty to defend is broader than their duty to indemnify.
 
 (Horace Mann Ins. Co. v. Barbara B.
 
 (1993) 4 Cal.4th 1076, 1081 [17 Cal.Rptr.2d 210, 846 P.2d 792].)
 

 Courts first determine whether insurers have a duty to defend by “comparing the allegations of the complaint with the terms of the policy.”
 
 (Waller, supra,
 
 11 Cal.4th at p. 19.) Regarding the policy, contract terms are interpreted in their “ ‘“ordinary and popular sense.’””
 
 (Id.
 
 at p. 18.) Any ambiguous terms are resolved in the insureds’ favor, consistent with the insureds’ reasonable expectations.
 
 (Montrose, supra, 6
 
 Cal.4th at p. 299.) Ambiguous terms are those capable of two or more reasonable constructions.
 
 (Waller, supra,
 
 11 Cal.4th at p. 18.)
 

 Regarding the complaint, insurers must defend a lawsuit that
 
 “potentially
 
 seeks damages within the coverage of the policy.”
 
 (Gray, supra,
 
 65 Cal.2d at p. 275.) The insurers’ duty to defend does not depend on whether damages are ultimately awarded.
 
 (Montrose, supra,
 
 6 Cal.4th at p. 295.) In fact, the duty to defend may “ ‘ “exist even where coverage is in doubt and ultimately does not develop,” ’ ” and it continues until there is no potential for coverage.
 
 (Ibid.)
 
 Any doubt as to whether the facts establish that the duty to defend exists must be resolved in the insured’s favor.
 
 (Id.
 
 at p. 300.) When
 
 *880
 
 “ ' “there is no possibility of coverage, there is no duty to defend . . . .” ’ ”
 
 (Waller, supra,
 
 11 Cal.4th at p. 19.) In “determining whether a particular policy provides a potential for coverage and a duty to defend, we are guided by the principle that interpretation of an insurance policy is a question of law.”
 
 (Id.
 
 at p. 18.)
 

 When damages that the liability policy covers flow from damages that the policy does not cover, no duty to defend exists. In
 
 Waller,
 
 emotional distress (bodily harm that that particular liability policy covered) flowed from the economic loss that the comprehensive liability policy did not cover.
 
 (Waller, supra,
 
 11 Cal.4th at p. 17.) There, we held that the insurer had no duty to defend.
 
 (Id.
 
 at p. 27.) Here, we consider whether the liability insurance policies potentially cover the source of the damages (loss of right-of-way) or the consequential damages (alleged devaluation and loss of rental value of Parcel B).
 
 (Gunderson, supra,
 
 37 Cal.App.4th at p. 1109.)
 

 Our conclusion will rest on a determination whether the Court of Appeal erred in failing to consider the easement’s legal meaning in light of the insurance contract. First, we look to the policies’ definition of the term “tangible property.” “Tangible property” is not ambiguous, and coverage therefore does not turn on alternative meanings. Consistent with an insured’s reasonable expectations, “tangible property” refers to things that can be touched, seen, and smelled. (See
 
 Warner
 
 v.
 
 Fire Ins. Exchange
 
 (1991) 230 Cal.App.3d 1029, 1034 [281 Cal.Rptr. 635].) To construe tangible property as including a legal interest in an easement or in property “requires a strained and farfetched interpretation.”
 
 (Giddings v. Industrial Indemnity Co.
 
 (1980) 112 Cal.App.3d 213, 219 [169 Cal.Rptr. 278].) Instead, an easement is a nonpossessory “ ‘interest in the land of another that gives its owner the right to use the land of another or to prevent the property owner from using his land.’ ”
 
 (County Sanitation Dist.
 
 v.
 
 Watson Land Co.
 
 (1993) 17 Cal.App.4th 1268, 1278 [22 Cal.Rptr.2d 117], quoting 5 Miller & Starr, Cal. Real Estate (2d ed. 1989),Easements, §§ 15:1, 15:5, pp. 389, 400; see now 6 Miller & Starr, Cal. Real Estate,
 
 supra,
 
 Easements, §§ 15:1, 15:5, pp. 4, 16.) An easement right is akin to goodwill, an anticipated benefit of a bargain, or an investment, none of which is considered tangible property.
 
 (Giddings v. Industrial Indemnity Co., supra,
 
 112 Cal.App.3d at p. 219.)
 

 It is especially important to distinguish an easement right from fee simple property ownership. (See
 
 Highland Realty Co.
 
 v.
 
 City of San Rafael
 
 (1956) 46 Cal.2d 669, 677-678 [298 P.2d 15];
 
 City of Long Beach
 
 v.
 
 Daugherty
 
 (1977) 75 Cal.App.3d 972, 977 [142 Cal.Rptr. 593].) Fee simple title provides an owner “the right to the surface and to everything permanently situated beneath or above it.” (Civ. Code, § 829.) By contrast, an
 
 *881
 
 appurtenant easement is a burden on land that creates a right-of-way or the right to use the land only. (Civ. Code, § 801.) It represents a limited privilege to use the land of another for the benefit of the easement holder’s land, but does not create an interest in the land itself.
 
 (Camp Meeker Water System, Inc. v. Public Utilities Com.
 
 (1990) 51 Cal.3d 845, 865 [274 Cal.Rptr. 678, 799 P.2d 758]; 6 Miller & Starr, Cal. Real Estate,
 
 supra,
 
 Easements, § 15:5, pp. 16-18; 4 Powell on Real Property (1999) Easements and Licenses, § 34.02[2][d], p. 34-17.)
 

 An easement is therefore an incorporeal or intangible property right that does not relate to physical objects but is instead imposed on the servient land to benefit the dominant tenement land.
 
 (City & County of San Francisco v. Calderwood
 
 (1867) 31 Cal. 585, 589-590;
 
 Wood v. Truckee Turnpike Co.
 
 (1864) 24 Cal. 474, 479;
 
 City of Hayward
 
 v.
 
 Mohr
 
 (1958) 160 Cal.App.2d 427, 431-432 [325 P.2d 209]; 6 Miller & Starr, Cal. Real Estate,
 
 supra,
 
 Fixtures, § 17:3, pp. 7-8.) Being incorporeal, the right to an easement is limited to the intangible benefit of access to the easement holder’s property.
 
 (Fresno etc. Co.
 
 v.
 
 Southern Pac. etc. Co.
 
 (1901) 135 Cal. 202, 203 [67 P. 773].) In other words, it is an intangible legal right. The owner of the dominant tenement may maintain an action for the enforcement of this intangible right and may recover damages from a party for obstructing the easement. (Civ. Code, § 809;
 
 Moylan v. Dykes
 
 (1986) 181 Cal.App.3d 561, 574 [226 Cal.Rptr. 673]
 
 {Moylan).)
 
 Awardable damages compensate the plaintiff for loss of use of the easement and the diminished value of the lot it benefited.
 
 (Moylan, supra,
 
 181 Cal.App.3d at p. 574.) The ability to recover damages for obstruction of an easement, however, does not change the intangible nature of the property right for purposes of interpreting insurance liability coverage. (See
 
 Gunderson, supra,
 
 37 Cal.App.4th at p. 1119.)
 

 As a matter of law, therefore, an easement, representing only a nonpossessory right to use another’s property, is not tangible property. As we will conclude, any damages the Tollaksons claimed were for economic loss due to loss of use of the easement. We will therefore conclude that the several liability insurance policies before us provided the Kazis with no potential coverage, and therefore no duty to defend, the Tollaksons’ claim for intangible losses.
 

 B.
 
 Case Law and Easement Property Rights
 

 1.
 
 Gunderson
 

 In
 
 Gunderson,
 
 the Court of Appeal concluded that disputes involving the loss of use of an easement or obstruction of an easement involve only “pure
 
 *882
 
 rights in property” or intangible rights in property.
 
 (Gunderson, supra,
 
 37 Cal.App.4th at p. 1119.)
 
 Gunderson
 
 held that a homeowners liability insurance policy did not require the insurer to defend or indemnify the insureds in an easement action because there was no claim of a tangible property loss.
 
 (Ibid.)
 
 The insureds in
 
 Gunderson
 
 purchased land believing they owned an easement. The plaintiff, who owned the servient estate, filed a complaint to quiet title, for declaratory relief, for fee title, and for injunctive relief to enjoin the insureds from using her property.
 
 (Id.
 
 at p. 1110.) The defendants tendered the defense to their liability insurer, which had issued a homeowners liability insurance policy that defined property damage to include “ ‘physical injury to or destruction of tangible property, including loss of its use.’ ”
 
 (Id.
 
 at p. 1117.) The insurer refused to defend the action on the ground that the complaint alleged no tangible property damage, excusing it from any defense obligation.
 
 (Ibid.)
 
 The trial court agreed with the insurer. It concluded that the undisputed facts established no ambiguity in the complaint to alert the insurer to a duty to defend. In disputes involving the right to use or obstruction of an easement, an intangible property right, it found no potential for coverage under the liability insurance policy.
 
 (Id.
 
 at p. 1112.)
 

 On appeal, the insureds claimed potential insurance coverage existed on a loss of use theory.
 
 (Gunderson, supra,
 
 37 Cal.App.4th at p. 1117.) According to the insureds’ theory, if the plaintiff in the underlying easement action had lost, her land would have been encumbered by an easement that would have restricted her use of her tangible property.
 
 (Ibid.)
 
 The
 
 Gunderson
 
 court, however, disagreed with the insureds and affirmed the trial court decision.
 
 (Id.
 
 at p. 1119.) The court reasoned that the plaintiff’s failure to allege physical damage to any tangible property that sat on the alleged easement (e.g., to a fence that crossed the property) eliminated any claim for a tangible property loss that would have given rise to a potential for liability coverage.
 
 (Ibid.) Gunderson
 
 emphasized that a dispute over use of an easement, always considered intangible property, simply did not involve damage to tangible property.
 
 (Ibid.)
 
 The court observed that the lawsuit “alleged only nonphysical injuries from [the plaintiff’s] assertion of adverse claims to the easement, including depreciation of the value of [the plaintiff’s] property. . . . ‘ “Understood in its plain and ordinary sense, ‘tangible property’ means ‘property (as real estate) having physical substance apparent to the senses’ [citation]. To construe the explicit words ‘tangible property’ to include intangible economic interests and property rights requires a strained and farfetched interpretation, doing violence to the plain language of the policies. Such an interpretation would rewrite the policies to fasten on the insurers a liability they have not assumed.” [Citations.]’ Thus, pure rights in property, such as those claimed to have been lost by [the plaintiff] in her underlying complaint, are by definition not the kind of physical damage or injury to tangible
 
 *883
 
 property necessary to trigger coverage under the Policy provisions. [Citation.]”
 
 (Id.
 
 at p. 1119.) Other states that have considered the question have also concluded that general liability insurance policies do not provide coverage for intangible property loss. (See, e.g.,
 
 Columbia Nat. Ins. v. Pacesetter Homes, Inc.
 
 (1995) 248 Neb. 1 [532 N.W.2d 1, 6, 8];
 
 Guelisch
 
 v.
 
 American Protection Ins. Co.
 
 (1989) 54 Wash.App. 117, 119 [772 P.2d 536].)
 

 2.
 
 The Court of Appeal’s application of Gunderson
 

 As noted
 
 (ante,
 
 at p. 878), the Court of Appeal here attempted to distinguish
 
 Gunderson
 
 on the ground that the underlying complaint in that case “did not allege any physical injury to or destruction of [the underlying plaintiff’s] property, as was required to trigger coverage by the definition of ‘property damage’ in the subject policy.” The Court of Appeal concluded that unlike the
 
 Gunderson
 
 complaint, the Tollaksons’ complaint alleged that “the Kazis’ act of paving the driveway in such a way as to render the land impassable and unusable to the Tollaksons constituted physical injury or damage, just as if the Kazis had dug a hole or erected a fence across the land.” The Court of Appeal believed that the “ ‘pure rights in property’ claimed to have been lost by [the
 
 Gunderson
 
 plaintiff] in her complaint were to hold her property in fee simple, free of any easement, and to be free of the insured’s use of her property which she claimed caused her property to depreciate. It was these rights, and not the right to the use and enjoyment of an easement, which the
 
 Gunderson
 
 court pronounced to be ‘intangible economic interests and property rights’ and not within the definition of ‘tangible property.’ . . .
 
 ([Gunderson, supra,]
 
 37 Cal.App.4th at pp. 1117-1119.)”
 

 The Court of Appeal misapplied
 
 Gunderson’s
 
 rule. The
 
 Gunderson
 
 court did note that if the plaintiff had alleged physical property damage (e.g., to a fence or other physical property standing on the alleged easement), the insurer might or might not have had a duty to defend the insureds in an action for that actual physical damage.
 
 (Gunderson, supra,
 
 37 Cal.App.4th at p. 1109.) The court did not decide the issue, however, because there were no allegations involving damage to tangible property in that case.
 
 (Ibid.)
 
 Contrary to the Court of Appeal’s position,
 
 Gunderson
 
 did not hold that allegations of physical damage to land burdened by an easement (or other intangible property interest) would give rise to a duty to defend or indemnify for loss of use or obstruction of the easement. The liability insurance policy in
 
 Gunderson,
 
 as here, required that the complaint allege damage to
 
 tangible
 
 property in order to trigger a duty to defend or indemnify the claimed loss.
 
 (Ibid.)
 

 Thus, the Kazis’ grading a driveway over their own Parcel A and the 10-foot strip they owned that was subject to an easement dispute did not
 
 *884
 
 change the nature of the underlying Tollakson action into an action for tangible property loss. Grading over the insureds’ own land that may have been subject to an implied easement did not change the
 
 easement’s
 
 intangible nature, nor could it ever change the character of the easement right-of-way the Tollaksons claimed.
 
 (Gunderson, supra,
 
 37 Cal.App.4th at p. 1119.) It is the nature of the easement right that was at issue, not the physicalities that may relate to it.
 
 (Ibid.)
 
 As
 
 Gunderson
 
 made clear, a loss of “pure rights in property” is not the physical damage or injury to tangible property required to trigger a duty to defend or indemnify under general liability insurance policies.
 

 Because an easement interest conveys no property rights to the land subject to the easement, it exists only to benefit the easement holder’s property. Interference with an easement frustrates the right of access by the easement holder to the burdened property, regardless of the method used to obstruct it, i.e., whether the easement is cordoned off or is physically damaged. In either case, the remedy is the same: the plaintiff must request that the obstruction be removed.
 
 (Scruby v. Vintage Grapevine, Inc.
 
 (1995) 37 Cal.App.4th 697, 703 [43 Cal.Rptr.2d 810].) The damages are also the same in either case: the dominant estate’s loss of rental value and diminished property value, or loss of the easement’s fair market value. In neither case, however, may an easement holder sue for damages to the underlying property, which the owner of the servient estate holds in fee title.
 

 Decisions in analogous situations support this conclusion. In
 
 Schaefer/Karpf Productions v. CNA Ins. Companies
 
 (1998) 64 Cal.App.4th 1306, 1319 [76 Cal.Rptr.2d 42], the Court of Appeal held that the comprehensive general liability insurance policy did not provide coverage for the plaintiff’s losses. There, the insured videotape duplication company had inadvertently copied the plaintiff television producer’s family special,
 
 The Best Christmas Pageant Ever,
 
 onto used cassette videotapes containing pornography. Unfortunately, the family special was shorter than the pornography, when viewed by purchasers of videotapes of the plaintiff’s television show. The plaintiff asserted that its resulting lost profits were due to the damaged tapes, which were tangible property (the insurance policy covered “damage to tangible property”).
 
 (Id.
 
 at p. 1317.) The Court of Appeal disagreed, reasoning that the plaintiff’s damages did not flow from a physical injury to the tapes, but from the injury to the plaintiff’s concept of a story about a Christmas pageant, which was intangible property.
 
 (Id.
 
 at p. 1316.) Similarly, here the damages did not flow from any injury to the land, but from the alleged injury to the Tollaksons’ right to an easement over Parcel A, which is intangible.
 

 In
 
 Lucker Mfg. v. Home Ins. Co.
 
 (3d Cir. 1994) 23 F.3d 808, 810
 
 (Lucker),
 
 the circuit court held that the design concept for a product was not tangible
 
 *885
 
 property under a comprehensive general liability insurance policy. The insured’s actions caused the plaintiff to have to revise its design plans. The circuit court agreed with the carrier that where the real value of a design is in the idea, not in the physical plans that memorialize that idea, any loss in value of the design represents a loss in value of the idea, which is intangible.
 
 (Id.
 
 at pp. 812-813.)
 
 Lucker
 
 reasoned that “none of the losses Lucker sought from [the insured] represented a loss in value of the storage medium in which the design . . . was embodied .... The recovery Lucker sought was for the loss of use of the design itself .... For this reason, we hold that Lucker’s loss of use of the . . . design was not loss of use of tangible property.”
 
 (Id.
 
 at p. 820.) Similarly here, the alleged loss in value of the Tollaksons’ property was from the loss of the use of the easement over the Kazis’ property, not damage to the physical medium, or the property itself. The real harm was the loss of use, which is intangible.
 

 In
 
 Waller,
 
 we held that intangible economic losses, which fell outside the liability policy coverage, caused the emotional trauma that investors suffered. (Wa
 
 ller, supra,
 
 11 Cal.4th at p. 22.) We stated that “it is widely understood by both insureds and insurers that such policies are not intended to cover economic losses. . . . [T]he damages alleged in [the underlying] complaint flowed from intangible property losses . . . .”
 
 (Id.
 
 at p. 15.) Like
 
 Waller,
 
 here the damages flow from an intangible loss—loss of use. Again, no damages are claimed, or could be claimed, for the loss of value to the underlying land itself.
 

 3.
 
 Actual physical damage to Parcel B
 

 The Kazis also persuaded the Court of Appeal that the Tollaksons’ complaint alleged actual physical damage to the Tollaksons’ own Parcel B. Indeed, the Court of Appeal erroneously interpreted the underlying complaint to allege that the Kazis had graded and trespassed on Parcel B, as well as on the land on Parcel A subject to the claimed easement. Grading and trespassing on the neighbors’ land would certainly seem to be “property damage” under the terms of the liability policies and would, if true, probably have triggered coverage independent of the intangible property issue discussed above, at least as to the trespass and ejectment causes of action.
 

 As the insurers observe, however, the Tollaksons’ complaint alleged only the intention to convert the 10-foot strip on the Kazis’ own Parcel A. In other words, the only property loss claimed in the Tollakson lawsuit was that the Kazis were interfering with the Tollaksons’ ability to use an easement
 
 *886
 
 across Kazis’ own property. Nonetheless, because the Tollaksons alleged that the Kazis graded Parcel A and obstructed Parcel B’s right-of-way over the “Common Driveway Easement,” the Kazis convinced the Court of Appeal that the Tollaksons were actually seeking to recover for physical injury to Parcel B. In turn, the Court of Appeal reasoned that the Tollaksons’ complaint stated a claim that was potentially covered under the Kazis’ liability insurance policies indemnifying third party property damage and personal injury.
 

 As a plain reading of the Tollaksons’ underlying complaint reveals, and as defendant insurers correctly assert, however, the only property in dispute in the Tollakson lawsuit was the 10-foot strip of property on Parcel A where the Kazis built an access road to their building site in the vicinity of the Tollaksons’ property boundary line. The Tollaksons’ complaint alleged that the Kazis’ grading of the 10-foot strip of property on Parcel A, which was subject to an implied common driveway easement to Parcel B, obstructed it and interfered with their right to use Parcel A as a right-of-way to Parcel B. Nowhere did the complaint allege any physical damage to the Tollaksons’ parcel, including that parcel’s 10-foot strip of property that would have constituted the other half of the implied easement.
 

 Indeed, the complaint’s actual words illustrate the Court of Appeal’s error. As defendant insurers observe, the Tollaksons’ complaint alleged only a loss of use of their implied easement over the Kazis’ Parcel A as follows: “[The Tollaksons] claim that there exists upon Parcel A an implied easement for a common driveway, for ingress, egress, and a right of way over and across Parcel A, parallel to the Boundary Line and for a width of not less than ten feet (the Disputed Property), all of which is appurtenant to Parcel B, and that Parcel B is the dominant tenement and Parcel A the servient tenement of such easement (hereinafter ‘the Common Driveway Easement’).”
 

 Thus, under the Tollakson complaint, the term “Disputed Property” referred to the 10-foot strip of land the Kazis owned in fee simple. In addition, the complaint defined the term “Common Driveway Easement” to refer to the Tollaksons’ easement or right-of-way over that “Disputed Property.” Therefore, the Tollakson complaint’s definition of the “Common Driveway Easement” included only a portion of Parcel A—the Kazis’ property—and in no way included any portion of Parcel B. When the Tollaksons complained that the grading of Parcel A interfered with the “entirety of the Common Driveway Easement,” they were complaining that the Kazis’ grading and construction involved Parcel A only and did not involve trespass on or
 
 *887
 
 destruction of any part of Parcel B. Even the trespass and ejectment allegations involved loss of use and occupation of the 10-foot strip of land that is part of Parcel A, or the Kazis’ half of the alleged implied easement.
 
 [2]
 

 In sum, the Tollaksons’ fundamental loss at stake here was their right to use the implied easement over Parcel A, and the alleged harm they suffered because of that loss of use. The law is clear, however, that in order to trigger a duty to defend, the Tollaksons had to allege that their own physical property, including the 10-foot strip of land on their parcel that was arguably subject to an implied easement for a right-of-way, was damaged when the Kazis graded their property. Their complaint made no allegations of damage to Parcel B, and hence, there was no possibility of liability coverage for third party property damage in this lawsuit. The Court of Appeal erred in distinguishing
 
 Gunderson
 
 from the Tollakson action.
 

 HI. Conclusion
 

 As the
 
 Gunderson
 
 court held, a loss of “pure rights in property” is not physical damage or injury to tangible property that triggers a duty to defend under a comprehensive liability insurance policy that provides coverage only for such losses.
 
 (Gunderson, supra,
 
 37 Cal.App.4th at p. 1109.) The Court of Appeal erred in concluding that the Kazis’ grading of a 10-foot strip of property on their land, which was allegedly subject to an implied easement for a common driveway, constituted property damage to tangible property under the applicable liability insurance policies, giving rise to a potential for coverage and requiring the insurers to defend the Kazis in the Tollakson
 
 *888
 
 action. Therefore, we reverse the Court of Appeal judgment to the extent it is inconsistent with the above reasoning, and remand the action for further proceedings consistent with this opinion.
 

 George, C. J., Mosk, J., Kennard, J., Baxter, J., Werdegar, J., and Brown, J., concurred.
 

 The petition of plaintiffs and appellants for a rehearing was denied April 11, 2001.
 

 [1]
 

 By court order, we specifically limited review to (1) whether interference with an easement right is property damage to tangible property giving rise to a duty to defend, and whether the Court of Appeal’s decision conflicts with
 
 Gunderson, supra,
 
 37 Cal.App.4th 1106; and (2) whether the Court of Appeal correctly characterized part of the underlying action as involving physical property damage.
 

 [2]
 

 The Court of Appeal’s conclusion that there was physical damage to the Tollaksons’ property was premised on its misunderstanding about the meaning of the “Common Driveway Easement.” The Court of Appeal reasoned that “by alleging that the encroachment and trespass by the Kazis ‘cover[ed] all or a portion of the Disputed Property . . . and the entirety of the Common Driveway Easement,’ the Tollakson complaint alleged property damage to the Tollaksons’ land, Parcel B, giving rise to potential coverage under all of the insurance policies at issue here and requiring the insurers to defend the Kazis in the Tollakson lawsuit. . . . Whatever its deficiencies, the Tollaksons’ pleading stated facts sufficient to demonstrate the Kazis had damaged their possessory and nonpossessory interests in their real property.” But, as defendant insurers observe, and as we have consistently noted, the Tollaksons did not seek to resolve any dispute over the portion of their Parcel B which they, in fact, acknowledged in the complaint was subject to an implied easement for the Kazis’ use. The definitional terms made this clear, and, as we have explained, the rest of the complaint supports this reading.
 

 The Court of Appeal also relied extensively on deposition testimony hinting that the Tollaksons’ attorney initially explored suing the Kazis for interference with Parcel B. But, as the record, shows, the attorney admitted that the Tollaksons were “only claiming an easement here,” or a right to use Parcel A. The attorney’s comment is supported by the face of the complaint, which did not allege that the Kazis physically trespassed onto the Tollaksons’ property.