[No. B195728. Second Dist., Div. Two. Nov. 27, 2007.]

RICHARD STELLAR et al., Plaintiffs and Appellants, v.
STATE FARM GENERAL INSURANCE COMPANY, Defendant and
Respondent.

**1500**

**COUNSEL**

Law Offices of Richard D. Farkas and Richard D. Farkas for Plaintiffs and Appellants.

Crandall, Wade & Lowe and William R. Lowe for Defendant and Respondent.

**OPINION**

**DOI TODD, Acting P. J.**—Plaintiffs and appellants Richard and Miles Stellar appeal from a grant of summary judgment entered in favor of defendant and respondent State Farm General Insurance Company (State Farm). The trial court ruled that no triable issue of fact existed and that State Farm was entitled to judgment as a matter of law. We affirm. The undisputed evidence established that State Farm owed no duty to defend appellants in a defamation action brought against them.

## FACTUAL AND PROCEDURAL BACKGROUND

State Farm issued a homeowners insurance policy (policy) to Richard and Nuala Stellar as named insureds, effective from June 2004 to June 2005. Relevant here, section II of the policy provided: "If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence, we will: [¶] 1. pay up to our limit of liability for the damages for which the insured is legally liable; and [¶] 2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the occurrence, equals our limit of liability." According to the policy, " 'occurrence,' when used in Section II of this policy, means an accident, including exposure to conditions, which results in: [¶] a. bodily injury; or [¶] b. property damages; [¶] during the policy period." In turn, the policy defined "bodily injury" as "physical injury, sickness, or disease to a person" and further provided that "[b]odily injury does not include: [¶] . . . [¶] emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person."

In December 2004, Richard and Nuala filed a complaint against Philip Stellar, Richard's brother,[1] alleging causes of action for defamation, intentional infliction of emotional distress and intentional interference with contract. The complaint alleged that, following the sale of Richard and Philip's mother's home, Philip made false written and verbal statements designed to injure Richard and Nuala.

---

[1] For clarity and convenience, we refer to several individuals by first name only.

In January 2005, Philip answered and filed a cross-complaint against appellants Richard and Miles Stellar, father and son, alleging causes of action for slander per se, libel and intentional infliction of emotional distress (the underlying action). Philip alleged five separate incidents to support his causes of action: (1) Richard verbally stated to an employee of the Los Angeles County Adult Protective Services division that Philip had sexually molested his eight-year-old son; (2) Richard made the same statement to two additional individuals at a later time; (3) Richard sent an e-mail to a third party stating "Philip is on drugs, or an old gambling problem has struck him again"; (4) Miles published an Internet posting that referred to Philip as a pedophile who sexually molested his son; and (5) Richard undertook efforts to prevent Philip's son from calling, visiting or having a relationship with his grandmother.

With respect to each of the first four actions, Philip alleged that appellants "acted willfully with the wrongful intention of injuring" Philip and "from an improper and evil motive amounting to malice in that [they] . . . wanted to harm, humiliate and injure" Philip. He further alleged that as a result of appellants' conduct he "suffered severe general damages to his reputation, extreme shame and mortification, and significant injury to his emotional state, well-being and feelings . . . ." As to appellants' preventing communications between Philip's son and his grandmother, Philip further alleged that appellants' conduct was "intentional and malicious" and that he suffered "extreme emotional and physical injury and damage . . . , including severe emotional distress, and including but not limited to sleep disruption, worry, upset stomach episodes, inability to concentrate on his professional and personal matters, nervousness, extra concern for the conditions of his beloved mother and young son, and undue stress." He sought general, special and punitive damages.

Appellants tendered the defense of the underlying action to State Farm in March 2005. In a March 31, 2005 letter to appellants, State Farm declined to assume the defense on the grounds that the underlying action failed to allege either an "occurrence" defined by the policy as an accident or unforeseen event, or any claim for "bodily injury" defined by the policy as physical injury. In September 2005, appellants' attorney challenged the denial of the defense. State Farm responded, reiterating its earlier position that the underlying action alleged neither an occurrence nor any claim of bodily injury.

In April 2006, appellants filed a complaint against State Farm alleging causes of action for breach of contract, bad faith insurance practices and

declaratory relief. State Farm answered and thereafter moved for summary judgment on the ground that it owed no duty to defend appellants in the underlying action. Appellants opposed the motion, asserting that triable issues of fact existed as to whether the underlying action asserted claims that were potentially covered by their policy and whether State Farm conducted an adequate investigation. While the motion was pending, appellants prevailed in the underlying action, which they defended at their own expense.

By order dated November 29, 2006, the trial court granted the motion without a hearing, ruling that "the court finds that there is no triable issue of material fact and that defendant State Farm General Insurance Company is entitled to judgment as a matter of law." The trial court entered judgment in favor of State Farm on the same day. This appeal followed.

## DISCUSSION

### I.  *Standard of Review.*

■ A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) " 'We apply a de novo standard of review to an order granting summary judgment when, on undisputed facts, the order is based on the interpretation or application of the terms of an insurance policy.' [Citations.] [¶] In reviewing de novo a superior court's summary [judgment] order in a dispute over the interpretation of the provisions of a policy of insurance, the reviewing court applies settled rules governing the interpretation of insurance contracts." (*Powerine Oil Co., Inc. v. Superior Court* (2005) 37 Cal.4th 377, 390 [33 Cal.Rptr.3d 562, 118 P.3d 589].) The ordinary rules of contract interpretation apply to insurance contracts. (*Ibid.*) To protect the interests of the insured, coverage provisions are interpreted broadly, and exclusions are interpreted narrowly. (*MacKinnon v. Truck Ins. Exchange* (2003) 31 Cal.4th 635, 648 [3 Cal.Rptr.3d 228, 73 P.3d 1205].)

We conclude that the trial court properly ruled there was no triable issue of material fact and State Farm was entitled to judgment as a matter of law.

### II.  *The Duty to Defend.*

■ In *Medill v. Westport Ins. Corp.* (2006) 143 Cal.App.4th 819, 828 [49 Cal.Rptr.3d 570], we recently summarized the legal principles governing an

insurer's duty to defend: "It is well established that an insurer must defend its insured against a suit 'which potentially seeks damages within the coverage of the policy.' [Citation.] This obligation can only be excused when the third party complaint ' *"can by no conceivable theory raise a single issue which could bring it within the policy coverage."* ' [Citation.] 'In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot.*' [Citation.] Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor. [Citation.] [¶] 'However, while the duty to defend is broad, it is not unlimited. It is entirely dependent upon a showing by the insured that the third party claim for which it seeks a defense is one for damages which *potentially* fall within the policy coverage. It is the nature and kind of risk covered by the policy which both defines and limits the duty to defend.' [Citations.] [¶] '[T]he determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy.' [Citation.] 'If, at the time of tender, the allegations of the complaint together with extrinsic facts available to the insurer demonstrate no potential for coverage, the carrier may properly deny a defense.' [Citation.]" (Italics omitted; accord, *Kazi v. State Farm Fire & Casualty Co.* (2001) 24 Cal.4th 871, 879–880 [103 Cal.Rptr.2d 1, 15 P.3d 223]; *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 19 [44 Cal.Rptr.2d 370, 900 P.2d 619].)

III.  *State Farm Owed No Duty to Defend Appellants in the Underlying Action.*

State Farm brought its summary judgment motion on the grounds that the underlying action failed to allege either an "occurrence" or "bodily injury" as those terms are defined in the policy. Appellants challenge both grounds. They contend that State Farm was not entitled to summary judgment because defamation can arise from a negligent—rather than an intentional—act, and because the underlying action alleged and Philip's discovery responses showed that Philip had suffered not only emotional but also physical injury. We conclude that appellants have failed to show the existence of a material fact precluding summary judgment.

A.  *The Underlying Action Did Not Allege an "Occurrence."*

The policy provided a defense and coverage for specified claims caused by an "occurrence," which the policy further defined as an "accident."

In *Ray v. Valley Forge Ins. Co.* (1999) 77 Cal.App.4th 1039 [92 Cal.Rptr.2d 473], the court affirmed a summary judgment, holding that an insurer owed no duty to defend a claim against an insured consultant who rendered bad advice because the complaint failed to allege an occurrence under the policy. There, the policy similarly defined an occurrence as an accident, yet provided no further definition for the term "accident." The court reasoned: "Although the term 'accident' is not defined in the policy, courts have consistently defined the term to require unintentional acts or conduct. [Citations.] The plain meaning of the word 'accident' is an event occurring unexpectedly or by chance. [Citation.]" (*Id.* at pp. 1045–1046.) Elaborating on the meaning of the term "accident," the court further explained: " 'An accident . . . is never present when the insured performs a deliberate act . . . . [W]here the insured intended all of the acts that resulted in the victim's injury, the event may not be deemed an "accident" merely because the insured did not intend to cause injury.' [Citations.]" (*Id.* at p. 1046; accord, *Geddes & Smith, Inc. v. St. Paul Mercury Indemnity Co.* (1959) 51 Cal.2d 558, 563–564 [334 P.2d 881] [defining the term "accident" in an insurance policy as " 'an unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause' "]; *Shell Oil Co. v. Winterthur Swiss Ins. Co.* (1993) 12 Cal.App.4th 715, 755 [15 Cal.Rptr.2d 815] ["California law also equates 'accident' with unexpected and unintended events"].) In short, "where damage is the direct and immediate result of an intended or expected event, there is no accident." (*Shell Oil Co.*, at p. 751.)

■ Relying on the definition of "accident" as construed by the California courts, the court in *Allstate Ins. Co. v. LaPore* (N.D.Cal. 1988) 762 F.Supp. 268 held that an insurer owed no duty to defend its insured in a defamation action because the insured's allegedly defamatory statements were not accidental. The court explained: "Defamation, which includes libel and slander, is [an] intentional tort which requires proof that the defendant intended to publish the defamatory statement. [Citation.] The very nature of defamation precludes the conclusion that it can occur 'accidentally.' " (*Id.* at p. 271, italics omitted; see also *Tradewinds Escrow, Inc v. Truck Ins. Exchange* (2002) 97 Cal.App.4th 704, 714 [118 Cal.Rptr.2d 561] [citing *Allstate Ins. Co. v. LaPore, supra,* 762 F.Supp. 268 with approval in ruling that a defamation claim would be excluded from coverage because such a tort cannot occur accidentally].)

■ On the basis of this authority, the trial court properly ruled that State Farm owed no duty to defend appellants. In the underlying action, Philip

alleged that appellants "willfully" made false statements, sent a false e-mail and published a false Internet posting, and intentionally prevented his son and grandmother from having a relationship. There are no allegations in the underlying action that suggest these statements and actions were unintended or unexpected. Though appellants contend that an insurer owes a duty to defend when extrinsic facts outside the pleadings indicate the possibility of coverage (e.g., *Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 296 [24 Cal.Rptr.2d 467, 861 P.2d 1153]), appellants submitted nothing either to State Farm or in opposition to the summary judgment motion that tended to show their actions were accidental.

■ Appellants also rely on an isolated statement in *Uhrich v. State Farm Fire & Casualty Co.* (2003) 109 Cal.App.4th 598, 610 [135 Cal.Rptr.2d 131], that "an insured could be liable for defamation for negligently publishing a defamatory statement" in arguing that a defamation claim does not necessarily involve intentional conduct. But that statement was merely part of a larger discussion concerning the effect of pleading on an insurer's coverage and defense obligations. As the court explained, "claims do not exist in the ether, they consist of pleaded allegations coupled with extrinsic facts. That is what defines the insurer's coverage duties, not the label chosen by the pleader. [Citation.]" (*Id.* at p. 611.) There, the court concluded that, notwithstanding an allegation of negligent conduct, the insurer was entitled to summary judgment because extrinsic evidence demonstrated that the insured's conduct was intentional and malicious—and hence not accidental. (*Id.* at pp. 611–614.) Here, on the other hand, the underlying action specifically alleged that appellants' conduct was willful and intentional, and arose from an evil and improper motive. Appellants offered no extrinsic evidence to support their characterization of their conduct as negligent. Accordingly, the trial court properly granted summary judgment in State Farm's favor on the ground that the underlying action did not involve a covered "occurrence" triggering State Farm's duty to defend.

B. *State Farm Owed No Duty to Defend Claims for Emotional and Physical Distress Arising from an Uncovered Loss.*

Appellants further contend that summary judgment was improperly granted because the underlying action alleged and Philip's discovery responses established that he was seeking damages for "bodily injury" within the meaning of the policy. Specifically, Philip alleged that he suffered "physical injury and damage . . . , including . . . upset stomach episodes . . . ." In his

interrogatory responses, Philip further averred that "the wrongdoings by cross-defendants have caused injuries to Philip Stellar, such as severe emotional distress, sleep disruption, headache, worry, upset stomach, inability to concentrate fully, general nervousness, exacerbated scalp condition (seborrheic dermatitis), extra worry and concern for his mother and son, and overall stress." Appellants assert that Philip's physical manifestations of his emotional distress constituted claims for bodily injury that triggered State Farm's duty to defend. (See, e.g., *Aim Insurance Co. v. Culcasi* (1991) 229 Cal.App.3d 209, 22 [280 Cal.Rptr. 766] ["absent physical injury, emotional distress is not 'bodily injury' "].)

But regardless of whether there were allegations or evidence of physical injury sufficient to constitute "bodily injury" under the policy, the undisputed evidence established that such injury stemmed from an underlying claim that was not covered by the policy. Under analogous circumstances, where the insureds sought a defense against claims that their intentional conduct creating economic loss allegedly resulted in severe emotional and physical distress, the court in *Waller v. Truck Ins. Exchange, Inc., supra,* 11 Cal.4th 1, held that the insurer owed no duty to defend because there was no allegation that an occurrence caused the alleged injuries. (*Id.* at pp. 26–27; accord, *Modern Development Co. v. Navigators Ins. Co.* (2003) 111 Cal.App.4th 932, 943 [4 Cal.Rptr.3d 528] [insurer owed no duty to defend claims for emotional and physical injuries resulting from insured's failure to comply with antidiscrimination laws, because such failure was not an "accident" or "occurrence" covered by the insurance policy]; *Miller v. Western General Agency, Inc.* (1996) 41 Cal.App.4th 1144, 1151–1152 [49 Cal.Rptr.2d 55] [insurer owed no duty to defend on the basis of law "clearly settled in California that occurrence-based liability policies were never intended to cover emotional distress damages that flow from an uncovered occurrence"].) In short, "[w]hen damages that the liability policy covers flow from damages that the policy does not cover, no duty to defend exists." (*Kazi v. State Farm Fire & Casualty Co., supra,* 24 Cal.4th at p. 880.) Thus, any allegations or evidence suggesting that Philip suffered physical injury as a result of appellants' conduct failed to create a triable issue of material fact precluding summary judgment.

## DISPOSITION

The judgment is affirmed. State Farm is entitled to recover its costs on appeal.

Ashmann-Gerst, J., and Chavez, J., concurred.