728

EDITH RYAN, Appellant, v. CARL C. HUFFMAN et al., Respondents.

Leander L. James for Appellant.

Hale McCowen for Respondents.

ADAMS, P. J.—On August 1, 1943, Olive B. Burr entered into a lease with Joseph L. Ryan and his wife, Edith Ryan, which leased to the Ryans, for a term of five years, certain real property known as the Mast Ranch. It was provided in said lease that the Ryans should make all necessary and desired repairs of the leased premises including renovation, repair and painting of the dwelling thereon; that they should not assign the lease, nor sublet the whole or any part of the property without the consent, in writing, of Mrs. Burr; and that they should make prompt reports to the lessor each three months, giving an itemized statement of their expenditures, supported by paid vouchers for repairs and alterations.

On April 1, 1945, the Ryans entered into an agreement with Carl C. Huffman and Elizabeth Huffman, his wife, assigning to the latter the lease with Mrs. Burr, said agreement providing that the Huffmans pay to the Ryans $3,500, said payment being evidenced by four promissory notes for various sums, payable to Edith Ryan, on different dates, but aggregating $3,500, representing, or purporting to represent, the value of the improvements made on the Mast Ranch by the Ryans. The Ryans agreed to secure the consent of Mrs. Burr to an assignment of the lease, it being said that if she would not agree then the Huffmans should be managers for the Ryans. But to protect the Huffmans, in the event Mrs. Burr did not consent to the assignment of the lease, there was added to the agreement a provision reading:

"It is further agreed that in case the parties of the second part are evicted by the owners all remaining notes are cancelled."

The Huffmans took possession of the ranch on April 1, 1945. Mrs. Burr refused consent to the assignment, and on October 8, 1945, caused to be served upon the Ryans a written notice cancelling her lease to them, on the ground, among others, that said lease had been assigned without her consent. The said notice contained the following paragraph: "That this is also notice to the said Carl C. Huffman and Elizabeth Huffman, that the undersigned refuses to approve the said sub-lease, and demands that they vacate the said property as such sub-lessees, and that the same be done forthwith." Copies were sent to the Huffmans, but when does not appear. Shortly thereafter Mrs. Burr telephoned the Huffmans asking that they remain on the ranch "as caretakers," and under no condition to leave because she didn't want the ranch vacant.

The Huffmans remained on the property and in January, 1946, a new lease was given to them by Mrs. Burr.

Defendants did not pay the promissory notes, and on or about May 29, 1947, Mrs. Ryan brought this action for the collection of same. Defendants answered, setting up the original lease and the subsequent agreement assigning same to them, the refusal of Mrs. Burr to agree to such assignment, and her notice to the parties terminating the original lease. They also averred that immediately after the service of said notice Olive Burr, the lessor, "re-entered and re-took possession of the premises described in said lease and evicted the said defendants therefrom."

The cause was heard by the court without a jury, after which findings were filed in favor of defendants, one of the findings being that on or about October 9, 1945, Mrs. Burr caused to be served upon the Ryans and the Huffmans a notice in writing cancelling the lease, and that following the service of said notice "the said Olive B. Burr as the lessor in said lease re-entered and retook possession of the premises described in said lease and evicted the defendants therefrom."

The only question presented on this appeal from the judgment which followed is whether or not the evidence supports the finding that defendants were "evicted from the premises by the owner" within the meaning of that term as used by the parties in their agreement and assignment of the original lease, so as to justify the cancellation of the notes sued upon.

It is obvious from the undisputed evidence that the Huffmans were not actually ousted from the premises, and that they continued to reside thereon from the time they took possession April 1, 1945; and that they remained, not only with the consent of Mrs. Burr, but at her specific request made immediately after she had mailed to them a copy of the notice terminating the original lease. The record also shows that prior to giving notice of termination of the lease Mr. Ryan and Mrs. Burr had corresponded regarding the property, Mr. Ryan stating that he and his wife were compelled to leave it because of Mrs. Ryan's health. He suggested that he be permitted to buy the property, sublease it or put a man there to manage the property. Mrs. Burr, on February 15, 1945, declined to sell, said she could not consent to leasing to someone she had never seen, and suggested that the third proposition was probably the best solution. In April Mr. Ryan wrote Mrs. Burr that he had hired Mr. Huffman to operate the ranch for him, though this was not true. On September 7, 1945, Mrs. Burr wrote Mr. Ryan stating that she had acquainted herself with this deal with the Huffmans, and that he had in fact leased the ranch to them. She also set forth other respects in which the lessee had violated the terms of the lease. On the same day she sent a copy of this letter to Mr. Huffman and wrote him that if he could make a settlement with Ryan she would "definitely cancel the Ryan lease and make a new one with you." Also she had, during the preceding summer, visited the ranch more than once and had met the Huffmans there.

It is undisputed that Mrs. Burr never reentered upon the property after the Huffmans took possession on April 1, 1945, and they have been in possession ever since; and there is no evidence that their possession has in any respect been disturbed or that they were deprived of the beneficial enjoyment of the premises. In fact they benefited to the extent that during the period from the termination of the original lease to the execution of the new one they paid no rent.

Under these circumstances we are unable to see that they were ever *evicted* from the ranch, either actually or constructively.

It is said in 2 Tiffany, Landlord and Tenant, section 185, page 1263:

"In order that there be an eviction by the landlord, in the legal sense, it is necessary that the tenant no longer retain possession of the premises. In case of an actual dispossession of the tenant, an 'actual eviction,' no question can arise in this regard, but when there is merely an interference with his possession and enjoyment, it is necessary that the tenant relinquish possession of the premises in order that there be a 'constructive eviction,' the theory being that the acts of interference by the landlord compel the tenant to leave, and that he is thus in effect dispossessed, though not forcibly deprived of possession. As has been remarked, 'the proposition that there can be retention of demised premises and an eviction are logically and legally contradictory.'" (Citing numerous cases.)

See *Tregoning* v. *Reynolds,* 136 Cal.App. 154, 156-157 [28 P.2d 79]; *Black* v. *Knight,* 176 Cal. 722, 723, 727 [169 P. 382, L.R.A. 1918C 319]; *Psihozios* v. *Humberg,* 80 Cal.App.2d 215, 220 [181 P.2d 699].

Some typical cases from other jurisdictions are: *Liberal Savings & Loan Co.* v. *Frankel Realty Co.,* 137 Ohio 489 [30 N.E.2d 1012, 1017]; *General Life Ins. Co.* v. *North American Mfg. Co.,* 320 Ill.App. 488 [51 N.E.2d 619]; *Title & Trust Co.* v. *Durkheimer Inv. Co.,* 155 Ore. 427 [63 P.2d 909, 919, 64 P.2d 834]; *Moumal* v. *Parkhurst,* 89 Ore. 248 [173 P. 669, 671]; *Aguglia* v. *Cavicchia,* 229 Mass. 263 [118 N.E. 283, 284]; *Herring* v. *Price* (La.App.), 4 So.2d 17, 20; *Chelsea Hotel Corp.* v. *Gelles,* 129 N.J.L. 102 [28 A.2d 172, 173]; *Estes* v. *Gatliff,* 291 Ky. 93 [163 S.W.2d 273, 276].

Obviously, the notes were given to compensate the Ryans for their expenditures for improvements made by them on the property, of which improvements the Huffmans have had, and

continue to have, the use and benefit; and the provision in their agreement that in the event they were evicted the notes would be cancelled contemplated only that if they did not remain and get such use and benefit the Ryans should bear the loss. Whether the $3,500 represented by notes was a fair charge for the improvements made by the Ryans is immaterial here, though there is evidence supporting it. The Huffmans agreed to the amount; and it is not contended that the notes were not given for a valuable consideration.

The judgment is reversed with directions to enter judgment for plaintiff.

Peek, J., and Thompson, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied January 17, 1949. Carter, J., voted for a hearing.