[No. D038121. Fourth Dist., Div. One. Apr. 30, 2002.]

RICHARD CUNNINGHAM et al., Plaintiffs and Respondents, v.
UNIVERSAL UNDERWRITERS, Defendant and Appellant.

## COUNSEL

Callahan, McCune & Willis and Colrena Kay Johnson for Defendant and Appellant.

Ault, Davis & Shonfeld, Thomas H. Ault, Gary E. Davis and R. Michael Jordan for Plaintiffs and Respondents.

## OPINION

**HALLER, Acting P. J.**—Cunningham Enterprises, Inc. (Cunningham), sued its liability insurer, Universal Underwriters (Universal), alleging Universal breached its duty to defend Cunningham in an action brought by a third party. After Cunningham and Universal each moved for summary judgment, the court denied Universal's motion, granted Cunningham's motion, and entered judgment in Cunningham's favor for $197,837.59 plus costs. Universal appeals.

We conclude the undisputed facts establish the absence of a potential for coverage under the relevant insurance policies and therefore Universal had no duty to defend Cunningham in the underlying action. Thus, the trial court erred in granting Cunningham summary judgment and in denying Universal's summary judgment motion. Accordingly, we reverse the judgment and remand for the court to enter summary judgment in Universal's favor.

### FACTUAL SUMMARY

This case concerns whether Universal had a duty to defend Cunningham in an action brought by Steven Beus and his limited liability company (collectively Beus). Beus's complaint alleged the following:

In April 1996, Beus met with a real estate agent representing Cunningham regarding potential sites for an Isuzu dealership. The agent showed Beus property owned by Cunningham located on Johnson Avenue in El Cajon (the Johnson property). The Johnson property consisted of a front lot and a rear lot. "The rear lot was 'improved' with dilapidated and unsightly . . .

buildings." The front lot was improved with structures appropriate for use as an automobile dealership. Cunningham's real estate agent told Beus that the tenant on the front lot, Holland Motor Homes, would vacate the premises in late November or early December.

In September 1996, Beus and Cunningham entered into a written lease agreement pertaining to the Johnson property. Although the agreement specifically provided that the January 1, 1997 lease commencement date was "subject to . . . Holland . . . vacating the Premises," Beus alleged that "the true intent of the parties was that the lease commencement date could be made earlier, but not later, than January 1, 1997."

In reliance on representations that Holland would be vacating the property no later than January 1, 1997, Beus expended funds to open the dealership on that date, including entering into agreements with the local redevelopment agency, obtaining loans from Isuzu, and paying for the demolition of the buildings on the rear lot. Beus also ordered an inventory of new Isuzu vehicles to be delivered to the new dealership.

While waiting to occupy the main portion of the lot, Beus moved into the vacant back lot, and stored the new Isuzu vehicles at this lot. On December 28, 1996, Beus representatives attempted to take possession of the front portion of the lot. But Holland representatives said that Holland would not vacate the premises for another two weeks. In the succeeding six weeks, Beus made numerous demands for possession of the front portion of the Johnson property, receiving in return a series of promises and representations from Cunningham and others that Holland would vacate the premises by certain dates. Meanwhile, Beus attempted to "operate out of a damp, tin building remaining on the rear lot portion of the premises with no phones, no electricity, and no plumbing." Because of its inability to move into the front lot, Beus was unable to obtain a sales license from the Department of Motor Vehicles, and thus was unable to generate any revenue.

Six weeks later, on February 18, 1997, Holland finally vacated the Johnson property, and Cunningham delivered full possession of the premises to Beus. During the next year, Beus remained in possession of the property and operated the dealership.

In February 1998, approximately one year after opening the dealership, Beus was "forced to close the doors" of the business and move out of the property. Beus then sued Cunningham and several others, alleging that Cunningham's late delivery of the premises caused the dealership to "fail[] to be profitable." Beus claimed the late delivery caused substantial additional losses, including the inability to take full advantage of the dealership

incentive programs, interest charges on the new vehicle credit line, six weeks in salary paid to employees who could not productively perform their services, lease payments on the computer system, and loss of good will, new and used car sales, and working capital. Beus asserted five substantive causes of action: (1) breach of contract; (2) intentional misrepresentation; (3) negligent misrepresentation; (4) intentional interference with prospective economic advantage; and (5) intentional interference with contractual relations.

Cunningham tendered the defense to Universal, which denied the tender. Cunningham eventually settled the action with Beus for $80,000. Cunningham then brought an action against Universal, alleging that Universal had a duty to defend because there was potential coverage under the policy's personal injury wrongful eviction coverage and property damage coverage. Both parties filed summary judgment motions. The trial court entered judgment in Cunningham's favor, determining there was a potential for coverage under the personal injury provision of Universal's insurance policy, and Universal was thus responsible for $117,837.59 reflecting Cunningham's underlying defense costs and $80,000 reflecting the underlying settlement amount.

DISCUSSION

I. *Generally Applicable Legal Principles*

■ A "party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that [the party] is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493].) ■ In a duty to defend case, an insurer moving for summary judgment "must establish *the absence of any . . . potential*" for coverage, i.e., that the underlying complaint " '*can by no conceivable theory raise a single issue which could bring it within the policy coverage.*' " (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 300 [24 Cal.Rptr.2d 467, 861 P.2d 1153] (*Montrose*).) In contrast, to prevail on its summary judgment motion, the insured need only show "the existence of a *potential for coverage*," i.e., "that the underlying claim *may* fall within policy coverage." (*Ibid.*)

Although the insurer's burden in moving for summary judgment is greater than the insured's burden in bringing its own affirmative motion, this disparity "merely reflects the substantive law." (*Montrose, supra,* 6 Cal.4th at p. 300.) "[A]n insurer has a duty to defend an insured if it becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for

coverage under the insuring agreement. [Citations.] This duty, which applies even to claims that are 'groundless, false, or fraudulent,' is separate from and broader than the insurer's duty to indemnify." (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 19 [44 Cal.Rptr.2d 370, 900 P.2d 619].) "[T]he determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy." (*Ibid.*) But " '[w]hether a particular claim falls within the coverage afforded by a liability policy is not affected by the form of the legal proceeding [or] the legal theory asserted by the" injured party. (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 841 [88 Cal.Rptr.2d 366, 982 P.2d 229].) The scope of the duty does not depend on the labels given to the causes of action in the third party complaint; instead it rests on whether the *alleged facts* or *known extrinsic facts* reveal a possibility that the claim may be covered by the policy. (See *Hurley Construction Co. v. State Farm Fire & Casualty Co.* (1992) 10 Cal.App.4th 533, 538 [12 Cal.Rptr.2d 629].) In determining the existence of a duty to defend on a summary judgment motion, we conduct a de novo review. (*Lomes v. Hartford Financial Services Group, Inc.* (2001) 88 Cal.App.4th 127, 131 [105 Cal.Rptr.2d 471].)

## II. *Universal's Summary Judgment Motion*

In moving for summary judgment, Universal argued the undisputed facts established there was no potential for coverage under the two types of coverage relied upon by Cunningham: (1) personal injury coverage; and (2) property damage coverage. With respect to each type of coverage, we begin by examining the language of the insurance policy, and then we determine whether the allegations of Beus's complaint (and any relevant extrinsic evidence) show a potential for coverage under the relevant policy provisions.

### A. *Personal Injury Coverage*

The personal injury coverage under Cunningham's policy states that Universal will pay all sums that Cunningham is required to pay as damages "because of INJURY." The policy defines " 'INJURY' " to include "false arrest, false imprisonment, *wrongful eviction*, wrongful detention, malicious prosecution, abuse of process, libel, slander, defamation of character, private nuisance (except pollution), and *invasion of rights of privacy or possession of personal property.*" (Italics added.) As with most forms of personal injury liability insurance, the coverage does not require an " 'accidental occurrence,' " and instead " '. . . is triggered by one of the offenses listed in the policy.' [Citation.] Although the offenses enumerated in a policy are construed broadly when they are defined in generic terms, they encompass ' ". . . specific torts which *reasonably* could fall within the general

category." [Citation.]'" (*Zelda, Inc. v. Northland Ins. Co.* (1997) 56 Cal.App.4th 1252, 1263 [66 Cal.Rptr.2d 356]; *Fibreboard Corp v. Hartford Accident & Indemnity Co.* (1993) 16 Cal.App.4th 492, 515 [20 Cal.Rptr.2d 376].)

Tendering the defense of the Beus action, Cunningham claimed it was potentially covered under the wrongful eviction category of personal injury. In its summary judgment motion, Universal argued that wrongful eviction presupposes the injured party was removed or ousted from real property, and there was nothing in Beus's complaint or the extrinsic facts to show a removal or ouster allegedly occurred in this case. Cunningham countered that a wrongful eviction claim within the meaning of the policy includes not only a removal from real property but also encompasses other forms of interference with a party's present or future right to use the property. The trial court adopted this definition.

█ In resolving these conflicting interpretations of the phrase "wrongful eviction," we apply settled rules of insurance policy construction. As with any contract, the goal of insurance policy interpretation "is to determine and give effect to the mutual intention of the parties." (*Safeco Ins. Co. v. Robert S.* (2001) 26 Cal.4th 758, 763 [110 Cal.Rptr.2d 844, 28 P.3d 889].) In so doing, we must "look first to the language of the [insurance policy] in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." (*Waller v. Truck Ins. Exchange, Inc., supra,* 11 Cal.4th at p. 18.) If the policy provision is unambiguous, i.e., has only one reasonable construction, it must be interpreted according to this plain meaning. (*Ray v. Valley Forge Ins. Co.* (1999) 77 Cal.App.4th 1039, 1044 [92 Cal.Rptr.2d 473].) But if a policy provision is ambiguous, the ambiguous terms " 'are resolved in the insureds' favor, consistent with the insureds' reasonable expectations.' " (*Safeco Ins. Co. v. Robert S., supra,* 26 Cal.4th at p. 761.)

█ Under these principles, we look first at the plain meaning of a wrongful eviction. The term "evict" means "[t]o expel . . . by legal process; put out"; "[t]o force out; eject; dispossess"; "[t]o recover (property, for example) by a superior claim or legal process." (American Heritage Dict. (new college ed. 1981) pp. 454-455.) These dictionary definitions comport with the commonly understood meaning of the word—an eviction requires that a person first be in actual possession of real property, and then be removed from that property. (See *Zelda, Inc. v. Northland Ins. Co., supra,* 56 Cal.App.4th at p. 1265 ["an eviction, popularly understood, is necessarily from *somewhere*"].) The legal definition of an eviction is the same: an "eviction" is "[t]he act or process of legally dispossessing a person of land or rental property." (Black's Law Dict. (7th ed. 1999) p. 575, col. 2.) A

*wrongful* eviction thus occurs when the person recovering the property had no right to dispossess the other party from the property.

Applying this plain meaning of the policy language, Beus's claims against Cunningham do not reasonably fall within the category of a wrongful eviction. The undisputed facts show that Beus's claims against Cunningham centered solely on Beus's inability to *take* possession of the front portion of the Johnson property. There was nothing in the complaint or the extrinsic evidence supporting a claim or the possibility of a claim that Cunningham *removed or expelled* Beus from any portion of the property. On this record, there was no potential for personal injury coverage under Cunningham's policy.

Cunningham's arguments to the contrary are unavailing.

Cunningham first argues that courts have expanded the phrase "wrongful eviction" beyond its commonly understood meaning to include "any claims of disturbance with the tenant's [potential] right of possession." We agree that if an insurance policy term has been judicially construed, this construction should be read into the policy unless the parties express a contrary intent. (See *Bartlome v. State Farm Fire & Casualty Co.* (1989) 208 Cal.App.3d 1235, 1239 [256 Cal.Rptr. 719].) But the predicate of Cunningham's argument is missing. Cunningham has not cited, and our independent research has not disclosed, any reported decision that has interpreted the language of the wrongful eviction provision in the policy before us to encompass claims for interference with future or existing property rights.

To show courts have interpreted the "wrongful eviction" phrase beyond its commonly understood meaning, Cunningham relies on *General Accident Ins. Co. v. West American Ins. Co.* (1996) 42 Cal.App.4th 95 [49 Cal.Rptr.2d 603] (*General Accident*). In that case, the underlying plaintiff managed an insurance agency and leased the premises occupied by the agency. (*Id.* at p. 99.) After the partnership entities (the insureds) terminated his contract and " 'ousted' " him from the premises, the plaintiff sued the insureds alleging wrongful termination, breach of contract, and tortious interference. (*Id.* at pp. 99-100.) The insureds tendered the claim under two insurance policies. (*Id.* at pp. 100-101.) The first policy provided coverage for "injury arising out of 'wrongful entry or eviction, *or other invasion of the right of private occupancy*' committed in the conduct of the insured's business." (*Id.* at p. 103, italics added.) The *General Accident* court found there *was* coverage under this provision because the insured invaded the injured party's right of private occupancy. (*Id.* at p. 104.) In so concluding, the court noted in dicta

that the phrase " ' "*other invasion of the right of private occupancy*" ' " did not require a *physical invasion* of an interest in real property. (*Ibid.*, italics added.)[1] The second insurance policy provided coverage for personal injury arising out of " '[w]rongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies . . . .' " (*General Accident, supra*, 42 Cal.App.4th at p. 104.) Stating that this provision "narrows the definition of this particular offense" to " 'some physical act of eviction or entry upon premises,' " the court found a potential for coverage under this policy, emphasizing that the third party plaintiff's complaint alleged that the insured entities had "ousted" him from the property and interfered with his right to occupy the premises. (*Id.* at pp. 104-105.)

*General Accident* does not support an expanded definition of the phrase "wrongful eviction" in the policy before us. The first *General Accident* insurance policy contained the additional " '*or other invasion of the right of private occupancy*' " phrase that is not included in the Universal policy. (*General Accident, supra*, 42 Cal.App.4th at p. 103, italics added.) The Universal policy instead specifically limits the "invasion" of property rights coverage to "personal property" interests, which are necessarily limited to claims such as conversion or damage to personal property. (See *ante,* at p. 1148.) Although the second *General Accident* insurance policy contained policy language that was closer to Universal's policy language because it did not include the "other invasion of the right to private occupancy" phrase, the court's analysis is inapplicable here because the insured in that case had *physically ousted* the underlying plaintiff from his business premises. (See *Stein-Brief Group, Inc. v. Home Indemnity Co.* (1998) 65 Cal.App.4th 364, 373 [76 Cal.Rptr.2d 3] [In *General Accident*, "we . . . found a potential for coverage, and thus a duty to defend, based on the [underlying plaintiff's] claims that he was ousted and ejected from the business premises, which was leased in his name as an individual"].) Here, there were no similar facts showing Cunningham made any attempt to oust or eject Beus from any portion of the property.

Cunningham alternatively attempts to show a broad judicial construction by directing us to the line of cases holding a wrongful eviction in a comprehensive general liability policy includes a constructive eviction. (See *Legarra v. Federated Mutual Ins. Co.* (1995) 35 Cal.App.4th 1472, 1484 [42 Cal.Rptr.2d 101]; *Giraud v. Milovich* (1938) 29 Cal.App.2d 543, 547-549 [85 P.2d 182].) This argument is not helpful because even if Universal

---

[1]Four years later, the same court held that it was "mistaken" in asserting this dicta and that the phrase " 'wrongful entry or eviction or other invasion of the right of private occupancy' " *does* require an allegation of a *physical* invasion onto the property. (*Sterling Builders, Inc. v. United Nat. Ins. Co.* (2000) 79 Cal.App.4th 105, 108, 112 [93 Cal.Rptr.2d 697].)

policy's personal injury coverage could be construed to include this legal meaning of a wrongful eviction, there are no facts showing the possibility of a constructive eviction claim in this case.

An eviction is actual when a landlord takes direct action to physically expel the tenant from the premises. An eviction is constructive if the landlord engages in acts that render the premises unfit for occupancy for the purpose for which it was leased, or deprive the tenant of the beneficial enjoyment of the premises. (*Kulawitz v. Pacific etc. Paper Co.* (1944) 25 Cal.2d 664, 670 [155 P.2d 24]; *Sanders v. Allen* (1948) 83 Cal.App.2d 362, 366 [188 P.2d 760].) Cunningham contends that Beus's complaint potentially supports a constructive eviction claim because Beus alleged it took possession of the rear portion of the Johnson property and this portion of the property was in an unsatisfactory condition for use as a car dealership.

This argument is unavailing because there are no allegations or extrinsic evidence showing that the condition of the rear lot had anything to do with the damages allegedly suffered by Beus. Beus did not seek any damages regarding the condition of the back lot; instead Beus's requested damages related solely to its inability to move into the front portion of the lot on the lease commencement date. To establish a potential for coverage under the Universal policy's personal injury coverage, Cunningham was required to show the third party's claimed damages were allegedly *caused* by the wrongful eviction. Cunningham did not, and could not, satisfy this element with respect to the condition of the rear lot.

Additionally, any claims regarding the condition of the rear lot cannot constitute a constructive eviction claim because it is undisputed that Beus never vacated this portion of the lot, and instead remained in possession of the entire property until Beus closed the business one year later. "In order that there be a constructive eviction it is essential that the tenant should vacate the property. There is no constructive eviction if the tenant continues in possession of the premises however much he may be disturbed in the beneficial enjoyment." (*Lori, Ltd. v. Wolfe* (1948) 85 Cal.App.2d 54, 65 [192 P.2d 112]; accord, *Green v. Superior Court* (1974) 10 Cal.3d 616, 625, fn. 10 [111 Cal.Rptr. 704, 517 P.2d 1168] (*Green*) ["to avail himself of the [constructive eviction] doctrine a tenant must vacate the premises"]; *Veysey v. Moriyama* (1921) 184 Cal. 802, 805-806 [195 P. 662, 20 A.L.R. 1363]; *Guntert v. City of Stockton* (1976) 55 Cal.App.3d 131, 140-141 [126 Cal.Rptr. 690, 127 Cal.Rptr. 602]; *Ryan v. Huffman* (1948) 88 Cal.App.2d 728, 731-732 [199 P.2d 407]; 4 Witkin, Summary of Cal. Law (9th ed. 1987) Real Property, § 574, pp. 748-750.)

*Guntert v. City of Stockton, supra,* 55 Cal.App.3d 131, relied upon by Cunningham, does not support a contrary conclusion. *Guntert* merely clarified that a landlord's interference with a tenant's quiet enjoyment may

support an action for damages even if the tenant does not move out of the premises. (See *Lee v. Placer Title Co.* (1994) 28 Cal.App.4th 503, 513-514 [33 Cal.Rptr.2d 572].) While a claim for breach of the covenant of quiet enjoyment is similar to a constructive eviction claim, the critical difference is that the latter claim may not be brought until the tenant has vacated the property. (See *Green, supra,* 10 Cal.3d at p. 625, fn. 10; Friedman et al., Cal. Practice Guide: Landlord-Tenant (The Rutter Group 2001) ¶ 7:298, p. 7-61 ["To invoke a constructive eviction defense or remedy, the aggrieved tenants must *surrender or vacate* within a reasonable time after the landlord's material interference with the lease"].)

In a different vein, Cunningham argues that we should expansively interpret the "wrongful eviction" language of the Universal policy based on the insurance industry's interpretations of the language. In support, Cunningham quotes from the July 1985 Fire Casualty & Surety Bulletin (Bulletin) as follows: " '*Wrongful eviction can be anything done by a landlord or his agent that is intended to and results in the tenant being deprived of use, occupancy, or enjoyment of all or part of the leased premises.*' " (Italics added.) Cunningham maintains this interpretation establishes that the phrase "wrongful eviction" was intended to include all forms of interference with a tenant's existing or future property rights.

We agree that a definition of an insurance term contained in an insurance industry bulletin may be relevant to defeat an insurer's contention that the term in a standard commercial liability policy should be more narrowly construed. (See *Maryland Casualty Co. v. Reeder* (1990) 221 Cal.App.3d 961, 972-973 [270 Cal.Rptr. 719].) However, the Bulletin was not part of the evidentiary record below. It was not proffered by either party in support or opposition to the summary judgment motions, and instead was cited only in Cunningham's summary judgment briefs. " '[W]hen reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered.' " (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 [58 Cal.Rptr.2d 899, 926 P.2d 1085].)

Moreover, when this court asked Cunningham's counsel to produce a copy of the material that was the basis for its asserted quotation concerning the Bulletin, counsel produced only an excerpt of a July 1998 California Continuing Education of the Bar program handbook entitled Identifying and Using Insurance Coverage in Business Litigation, which contains a series of paragraphs discussing different types of personal injury coverage. The language quoted in Cunningham's appellate brief comes from one of these paragraphs, which merely paraphrases and does not purport to quote from the Bulletin. This material was therefore of no help in construing the policy language before us.

Several weeks later, Cunningham notified us that it had finally obtained a copy of the Bulletin and submitted excerpts of that Bulletin to this court. Even assuming we could properly consider this evidence, it does not support Cunningham's position. Most significantly, the Bulletin makes clear that its discussion is limited to the pre-1986 version of the standard wrongful eviction coverage. As recognized by two California appellate courts, in 1985 a broad form of the standard wrongful eviction clause ("wrongful entry or eviction, *or other invasion of the right of private occupancy*") was in effect, but this version was narrowed by the Insurance Services Organization as part of the 1986 standard form comprehensive general liability policy. (*General Accident, supra,* 42 Cal.App.4th at p. 104, italics added; see *Martin Marietta Corp. v. Insurance Co. of North America* (1995) 40 Cal.App.4th 1113, 1122 [47 Cal.Rptr.2d 670].) The post-1985 standard policies no longer included the "or other invasion of the right of private occupancy" clause. (*General Accident, supra,* 42 Cal.App.4th at p. 104.)

The relevant personal injury coverage at issue here is materially different from the pre-1986 version discussed in the Bulletin. Universal's policy provides coverage only for wrongful eviction, and does not include the "*other* invasion of the right of private occupancy" language of the pre-1985 standard policies. Thus, we cannot assume that the version of the policy language discussed in the Bulletin was equivalent to the policy language before us. Further, the Bulletin refers to the Ballentine's Law Dictionary as the source of its definitions of policy language. Ballentine's Law Dictionary defines "eviction" as a "[d]ispossession, actual or constructive," including a "disturbance of [a tenant's] possession, . . . depriving him of the enjoyment of the demised premise, or any portion thereof, by title paramount or by entry and act of the landlord." (Ballentine's Law Dict. (3d ed. 1969) p. 424, col. 1.) Cunningham's alleged failure to timely deliver possession to Beus does not fit into these definitions.

 An "insurer's duty to defend is not absolute but is measured by the nature and kinds of risks covered by the policy." (*Rosen v. Nations Title Ins. Co.* (1997) 56 Cal.App.4th 1489, 1497 [66 Cal.Rptr.2d 714].) Thus, our focus must be on "the language of the policy itself, not upon 'general' rules of coverage that are not necessarily responsive to the policy language." (*American Cyanamid Co. v. American Home Assurance Co.* (1994) 30 Cal.App.4th 969, 978 [35 Cal.Rptr.2d 920].) Further, although we must resolve any doubt as to whether the facts establish a defense duty in the insured's favor, "[w]e may not impose coverage by adopting a strained or absurd interpretation in order to create an ambiguity where none exists." (*Rosen v. Nations Title Ins. Co., supra,* 56 Cal.App.4th at p. 1497; accord, *Waller v. Truck Ins. Exchange, Inc., supra,* 11 Cal.4th at p. 19.) Here,

a determination that Beus's complaint alleged a wrongful eviction claim would be a strained and unreasonable interpretation of the policy language, and thus we decline to adopt Cunningham's policy construction.

## B. *Property Damage Coverage*

Cunningham alternatively argues there was a duty to defend because there was a potential for coverage under the property damage provisions of Universal's policy.

Universal's policy provides it will pay all sums Cunningham must pay as damages "because of INJURY to which this insurance applies caused by an OCCURRENCE." " 'INJURY' " is defined to include "damage to or loss of use of tangible property." An " 'OCCURRENCE' " is defined to mean "an accident, including continuous or repeated exposure to conditions . . . neither intended nor expected from the standpoint of a reasonably prudent person."

Cunningham maintains that Beus's complaint alleged an occurrence, i.e., Cunningham's negligent failure to expel Holland from the property, and sought covered property damages, i.e., losses arising from Beus's inability to use the front portion of the Johnson property. Even assuming we could construe Beus's complaint to potentially allege an occurrence, there is no possibility of coverage because Beus did not allege covered property damage.

The Universal policy's property damage provision covered only those claims alleging "damage to or loss of use of *tangible* property." (Italics added.) The California Supreme Court recently interpreted this standard insuring clause to hold the provision does not cover the loss of use of *intangible* property rights. (*Kazi v. State Farm Fire & Casualty Co.* (2001) 24 Cal.4th 871, 879 [103 Cal.Rptr.2d 1, 15 P.3d 223] (*Kazi*).) The court reasoned that " 'tangible property' refers to things that can be touched, seen, and smelled" (*id.* at p. 880), and "as a matter of law" interference with a "nonpossessory ' "interest in the land of another" ' " does not satisfy this definition. (*Id.* at pp. 881, 880.) Applying this principle, the *Kazi* court held the loss of use of an easement did not qualify as property damage because an easement is an intangible property right more akin to the loss of an investment than fee simple property ownership. (*Id.* at p. 880.)

Under these principles, Cunningham's claim for a defense under Universal's property damage provision fails. Beus's claimed loss concerned solely an intangible property right—the interference with its right to possession of real property under the parties' lease. A tenant's right to possess property on

the lease commencement date is a contractual right that does not mature into a property right until possession actually occurs. A landlord's failure to deliver possession of the premises merely gives the tenant a right to abandon the tenancy and sue for damages, but does not give the tenant the legal right to act as a possessor of the real property until the date of the actual transfer. A nonpossessing tenant has no greater possessory property rights than does an easement holder. In this regard, Cunningham's reliance on *Hendrickson v. Zurich American Ins. Co.* (1999) 72 Cal.App.4th 1084 [85 Cal.Rptr.2d 622] is misplaced because the injured parties in that case were in full possession of the property claimed to have been damaged by the insured's tortious conduct.

We further reject Cunningham's argument that Beus alleged covered property damage by asserting that Cunningham's tortious conduct caused Beus to suffer a "loss of use" of personal property, i.e., the inventory of the new vehicles. Cunningham's claimed failure to deliver the real property on the commencement date did not cause a "loss of use" of the vehicles within any reasonable interpretation of the phrase. At most, Cunningham's alleged conduct caused economic damages relating to the inability to use the land to sell the vehicles. This does not reflect covered property damage within the meaning of the policy. (See *Continental Casualty Co. v. Superior Court* (2001) 92 Cal.App.4th 430, 443 [111 Cal.Rptr.2d 849].)

Because Beus's complaint alleged only an intangible economic loss, it did not constitute the type of "loss of use" property damage necessary to trigger coverage under the property damage policy provisions. (See *Kazi, supra,* 24 Cal.4th at pp. 880-881; *Waller v. Truck Ins. Exchange, Inc., supra,* 11 Cal.4th at p. 17; see also *Continental Casualty Co. v. Superior Court, supra,* 92 Cal.App.4th at p. 443.) A contrary conclusion would provide a landlord with liability coverage in every tenant holdover case where the succeeding tenant alleges a breach of the commencement date—a result that could not have been envisioned when the landlord purchased liability coverage for *property damage*. Where, as here, the "fundamental nature of [the] transactions [between the parties] is economic," an insurer generally does not have a duty to defend "even though the litigation will encompass issues relating to property damage." (*Continental Casualty Co. v. Superior Court, supra,* 92 Cal.App.4th at p. 443.)

We note further that the result here is consistent with a specific exclusion in the policy stating that "[t]his insurance does not apply to . . . loss of use of property not physically damaged, if caused by: (1) [Cunningham's] delay or failure in performing any agreement or contract . . . ." This exclusion applies as a matter of law because Beus did not allege the property was

physically damaged, and Beus sought damages based exclusively on Cunningham's delay in failing to perform its obligations with respect to the lease commencement date.

## DISPOSITION

Judgment reversed. The matter is remanded for the trial court to vacate its order granting summary judgment to Cunningham, and to enter summary judgment in Universal's favor. Universal to recover costs on appeal.

O'Rourke, J., and McConnell, J., concurred.

Respondents' petition for review by the Supreme Court was denied July 17, 2002. Brown, J., did not participate therein.