Joseph BRUCIA and Frances
Brucia, Plaintiffs,

v.

HARTFORD ACCIDENT AND INDEM-
NITY and Hartford Casualty Insurance
Company, et al.   Defendants.

No. C 02–05331 SBA.

United States District Court,
N.D. California.

Jan. 22, 2003.

See also, 2003 WL 23310258, denying re-
consideration.

Jon Enscoe, John F. Barg, Jon G. Lycett, Barg, Coffin, Lewis & Trapp LLP, San Francisco, CA, for Plaintiffs.

Curits P. Holdsworth, Philip E. Smith, Smith, Ellison & Harraka, Irvine, CA, for Defendants.

## ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

ARMSTRONG, District Judge.

This matter comes before the Court on Plaintiffs Joseph Brucia and Frances Brucia's Motion for Partial Summary Judgment [Doc. 10] and Defendants Hartford Accident and Indemnity Company and Hartford Casualty Insurance Company's Motion to Dismiss [Doc. 5]. Having read and considered the arguments presented by the parties in the papers submitted to the Court, the Court finds this matter appropriate for resolution without a hearing. The Court hereby GRANTS Plaintiffs' Motion for Partial Summary Judgment and DENIES Defendants' Motion to Dismiss.

## I. BACKGROUND

This action involves a suit by Plaintiffs Joseph and Frances Brucia against its liability insurer, Defendants Hartford Accident and Indemnity Company and Hartford Casualty Insurance Company (collectively "The Hartford"). Plaintiffs have been sued by Randolph & Hein ("R & H") and seek to force The Hartford to pay the costs of defending the lawsuit filed by R & H.

### A. The Underlying Action

From 1975 through 2000, R & H leased commercial property ("the Property") from Plaintiffs. (R & H Complaint ¶ 14). In late 1998, the San Francisco Department of Public Health discovered hazardous substances at the property, which resulted in a governmental enforcement and removal action, identifying R & H as a responsible party. (R & H Complaint ¶¶ 28–31) In June 2001, R & H filed suit against Plaintiffs, alleging, among other things, that Plaintiffs violated the implied covenant of quiet enjoyment by interfering with R & H's right to occupy the leased premised. (R & H Complaint ¶ 70). Specifically, the complaint in the underlying action ("R & H Complaint" or the "Underlying Complaint") alleges that the property R & H leased from Plaintiffs was contami-

nated with hazardous substances, that Plaintiffs knew or shown have known that the property was contaminated, and that Plaintiffs breached the implied covenant of quiet enjoyment when they failed to disclose to R & H that the property was contaminated. (R & H Complaint ¶¶ 65–72). The Underlying Complaint further alleges that, as a result of Plaintiffs' conduct, R & H was forced to relocate its business operation to provide the San Francisco Department of Public Health the opportunity to inspect and test the property. (R & H Complaint ¶ 76). R & H lost considerable use of the premises, lost rental revenue from subtenants, and incurred costs of capital due to business interruption, lost or lower productivity, and the time spent by officers and employees of R & H on the contamination problem. (R & H Complaint ¶ 76).

## B. The Insurance Policy

The Hartford issued a series of primary and umbrella insurance policies to Plaintiffs covering the period from 1985 until 1998, when Plaintiffs sold the property. The most recent policy was issued by Defendant Hartford Casualty Insurance Company (HCIC) for the period March 11, 1998 through March 11, 1999—Policy No. 57UUC HI 2522 ("the Policy")(attached to the Complaint as Exhibit A). The Policy covers "personal injury" damages, defined to include injury arising out of "[t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor." *Id.* at Commercial General Liability Coverage Form, ¶ 13. The Policy also covers "property damage," defined, in relevant part, as "loss of use of tangible property." *Id.* at ¶ 15. The Policy contains a "Pollution Exclusion" which excludes from coverage " '[b]odily injury' or 'property damage' arising out of the actual, alleged or threat-

ened discharge, dispersal, seepage, migration, release or escape of pollutants...." *Id.* at ¶ 2.f(1). The 1998 Policy contains an additional pollution exclusion clause ("Second Pollution Exclusion") which excludes coverage for "[a]ny loss, cost or expense arising out of any: (a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants." *Id.* at ¶ 2.f(2).

Plaintiffs tendered the Underlying Complaint to The Hartford in June 2001. When The Hartford denied coverage, Plaintiffs filed the instant suit. Plaintiffs now seek partial summary judgment on the issue of whether The Hartford breached its duty to defend Plaintiffs in the underlying action brought by R & H. Plaintiffs argue that the Underlying Complaint contains allegations that are covered under the personal injury section of the policy, rather than the property damage section of the policy, and therefore The Hartford has a duty to defend the underlying action. The Hartford opposes Plaintiffs motion for summary judgment and moves the Court to dismiss this action, on the grounds that the Underlying Complaint falls under the property damage section of the insurance policy, which is subject to a pollution exclusion that precludes coverage. The Hartford further argues that even if the Court finds that the Underlying Complaint alleges damages arising under the personal injury section of the policy, the pollution exclusion applies to the entire policy and therefore bars coverage.

## II. DISCUSSION

### A. Standard of Review for Summary Judgment

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when the Court concludes that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, summary judgment is warranted against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party moving for summary judgment bears the initial burden of demonstrating the "absence of a genuine issue of material fact." *Id.* at 323, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265. If the movant meets this burden, the nonmoving party must come forward with specific facts demonstrating a genuine factual issue for trial. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However,

> [A]t summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party: if direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. Put another way, if a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied.

*T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir.1987) (citations omitted). Inferences must be drawn in the light most favorable to the nonmoving party. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505, 91 L.Ed.2d 202; *Matsushita*, 475 U.S. at 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538.

The interpretation of the meaning of terms of an insurance policy and the scope of the insurance policy's coverage are questions of law, and therefore appropriate for resolution by this Court on summary judgment. *See Western Mutual Ins. Co. v. Yamamoto*, 29 Cal.App.4th 1474, 1481, 35 Cal.Rptr.2d 698 (1994).

### B. Analysis

#### 1) The Scope of the Duty to Defend

Under California law, "[a] liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity...'[T]he carrier must defend a suit which potentially seeks damages within the coverage of the policy.'" *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076, 1081, 17 Cal.Rptr.2d 210, 846 P.2d 792 (1993)(internal citations omitted). To establish a duty to defend, the insured "must prove the existence of a potential for coverage, while the insurer must establish the absence of any such potential. In other words, the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot." *Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th 287, 300, 24 Cal. Rptr.2d 467, 861 P.2d 1153 (1993). "[T]he determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy." *Waller v. Truck Ins. Exch.*, 11 Cal.4th 1, 19, 44 Cal.Rptr.2d 370, 900 P.2d 619 (1995). "[C]overage turns not on 'the technical legal cause of action pleaded by

the third party' but on the *'facts* alleged in the underlying complaint' or otherwise known to the insurer." *Swain v. California Casualty Insurance Co.,* 99 Cal. App.4th 1, 8, 120 Cal.Rptr.2d 808 (2002)(quoting *Barnett v. Fireman's Fund Ins. Co.,* 90 Cal.App.4th 500, 510, 108 Cal. Rptr.2d 657 (2001)). If the insurer owes a duty to defend, to fulfill its duty to defend, the insurer must defend immediately and it must defend entirely. *Buss v. Superior Court,* 16 Cal.4th 35, 49, 65 Cal.Rptr.2d 366, 939 P.2d 766 (1997).

### 2) *Personal Injury Damage*

■ In the Underlying Complaint, R & H alleges, among other things, that Plaintiffs breached the implied covenant of quiet enjoyment they owed as landlords when Plaintiffs failed to use reasonable care to discover hazardous substances and/or when Plaintiffs failed to disclose to R & H that the property was contaminated. Plaintiffs contend that these allegations are allegations of "personal injury" under the terms of the Policy. In pertinent part, the Policy defines "personal injury" as injury arising out of "[t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor." The Hartford contends that the injury alleged by R & H is not a personal injury claim, but rather a claim for "property damage," defined in the Policy to include "loss of use of tangible property," since R & H's claims relate to R & H's loss of use of the Leased Premises due to contamination of the property.

In support of their position, The Hartford cites a line of cases in which California courts refused to allow insureds to recast property damage claims as personal injury claims to avoid a pollution exclusion in an insurance contract. *See Lakeside Non–Ferrous Metals, Inc. v. Hanover Insurance Co.,* 172 F.3d 702 (9th Cir.1999); *Legarra v. Federated Mut. Ins. Co.,* 35 Cal.App.4th 1472, 42 Cal.Rptr.2d 101 (1995); *Titan Corp. v. Aetna Casualty & Surety Co.,* 22 Cal.App.4th 457, 27 Cal. Rptr.2d 476 (1994). In these cases, the insureds sought coverage under a personal injury clause of an insurance contract for defense of trespass and nuisance, arguing that the contamination constitutes a wrongful entry or invasion, and thus falls under the definition of personal injury damages. *See Lakeside,* 172 F.3d at 703; *Legarra,* 35 Cal.App.4th at 1483, 42 Cal. Rptr.2d 101. These courts refused to characterize the pollution damage as a personal injury damage, reasoning that "[t]o interpret...pollution as a wrongful entry or other invasion of the right to private occupancy would nullify the pollution exclusion since all property damage caused by pollution would simply be recast as personal injury." *Legarra* at 1483–1484, 42 Cal.Rptr.2d 101. Therefore, these cases stand for the proposition that pollution damage itself does not amount to "wrongful entry" or "invasion of the right to private occupancy" under a personal injury clause of an insurance contract with a pollution exclusion.

■ In the instant case, unlike the cases cited above, R & H is not merely asserting (and Plaintiffs are not arguing) that pollution damage to the property constituted an invasion of R & H's right to private occupancy. Rather, R & H has asserted that Plaintiffs invaded their right to private occupancy under the lease when Plaintiffs failed to inspect the property or disclose the contamination to R & H. By failing to inspect the property and failing to disclose contamination, R & H alleges that Plaintiffs, as owners and lessors of the Property, violated the implied covenant of quiet enjoyment contained in the lease. The covenant of quiet enjoyment "insulates the

tenant against any act or omission on the part of the landlord, or anyone claiming under him, which interferes with a tenant's right to use and enjoy the premises for the purposes contemplated by the tenancy." *Petroleum Collections Inc. v. Swords* 48 Cal.App.3d 841, 846, 122 Cal.Rptr. 114 (1975). A fair reading of the Underlying Complaint reveals that R & H is not simply suing Plaintiffs for property damage, and Plaintiffs are not merely attempting to recharacterize a suit for property damage as a suit for personal injury. Rather, R & H has alleged that Plaintiffs interfered with and jeopardized R & H's right of possession of the property when Plaintiffs breached their affirmative duty as landlords to inspect the property and to disclose the contamination of the property.

Under the insurance policy, The Hartford has a duty to defend claims of injury arising out of "[t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor." Here, R & H, tenants of the Property, have sued Plaintiffs, their landlords, for invading their right of private occupancy to the Property, not merely based on the contamination of the property, but also based on Plaintiffs' alleged failure to inspect and disclose contamination. Accordingly, the Court finds that the Underlying Complaint alleges personal injury claims separate from claims for property damage.[1]

### 3) *Applicability of the Pollution Exclusion*

■ The Hartford argues that, even if the Court finds that the Underlying Complaint alleges personal injury damages, the Second Pollution Exclusion bars coverage. The Court disagrees. Although the Second Pollution Exclusion does not expressly state that it applies only to property damage or bodily injury, both pollution exclusions are listed as exclusions under Section IA of the insurance contract, the section of

1. Plaintiffs have also argued that the allegations in the Underlying Complaint cannot be claims for "property damage," since the property damage section of the policy applies only to "tangible property." Plaintiffs argue that a leasehold interest is not "tangible property" and therefore damage to a leasehold interest is not property damage as defined in the policy. No California court has directly considered whether a tenant in possession of a property has a tangible property right. In *Kazi v. State Farm Fire and Casualty Co.*, 24 Cal.4th 871, 103 Cal.Rptr.2d 1, 15 P.3d 223 (2001), the Supreme Court of California held that an easement represents only a nonpossessory right to use another's property, and therefore is not tangible property. *Id.* at 881, 103 Cal.Rptr.2d 1, 15 P.3d 223. In *Cunningham v. Universal Underwriters*, 98 Cal.App.4th 1141, 120 Cal.Rptr.2d 162 (2002), a California appellate court applied the reasoning of *Kazi* to hold that a nonpossessing tenant, whose claimed loss concerned solely the interference with its right to possession of real property under the parties' lease, did not allege damage to a tangible property right. As the court in *Cunningham* explained, "[a] tenant's right to possess property on the lease commencement date is a contractual right that does not mature into a property right until possession actually occurs. A landlord's failure to deliver possession of the premises merely gives the tenant a right to abandon the tenancy and sue for damages, but does not give the tenant the legal right to act as a possessor of the real property until the date of actual transfer." *Id.* at 1155–1156, 120 Cal. Rptr.2d 162. The clear implication of the *Cunningham* court's reasoning is that when a tenant legally takes possession of the premises, the tenant, unlike an easement holder or a nonpossessing tenant, has a possessory property right in the premises. As such, a tenant in possession presumably has a tangible property interest in the premises and can assert claims for property damage, as defined in the insurance contract. Regardless, this argument is not dispositive in the instant case, since the Court finds that R & H has asserted claims for personal injury that extend beyond property damage.

the contract dealing with coverage for bodily injury and property damage liability. Coverage for personal injury claims, on the other hand, is found in Section IB, a separate section containing its own insuring agreement and applicable exclusions. Given the structure of the insurance contract, an insured would reasonably expect that the exclusions listed under Section IA of the insurance contract, including both pollution exclusions, apply only to property damage or bodily injury. *See Legarra v. Federated Mut. Ins. Co.,* 35 Cal.App.4th 1472, 1477, 42 Cal.Rptr.2d 101 (1995)(finding that, given the format of the policy, an insured would reasonably expect the pollution exclusion to apply only to coverage for bodily injury and property damage, despite the lack of specific reference in the pollution exclusion to bodily injury and property damage). Therefore, the Court finds that the pollution exclusions in the insurance contract do not bar coverage for personal injury claims against the insured, and The Hartford has a duty to defend Plaintiffs in the suit filed by R & H.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' motion for partial summary judgment and DENIES The Hartford's Motion to Dismiss.

IT IS SO ORDERED.