Filed 7/14/14  Signature Healthcare Services v. Certain Underwriters at Lloyd's London CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| SIGNATURE HEALTHCARE SERVICES, LLC, et al., | B250481 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. GC048081) |
| v. | |
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, C. Edward Simpson, Judge.  Affirmed.

Law Offices of James R. Rogers, James R. Rogers and Joshua D. Blitt for Plaintiffs and Appellants.

Haight Brown & Bonesteel, Michael J. Leahy and Christopher Kendrick for Defendant and Respondent.

Defendant and respondent Certain Underwriters at Lloyd's, London (Lloyd's) issued a combined general liability and professional liability insurance policy to plaintiffs and appellants Signature Healthcare Services, LLC, and Aurora Las Encinas Hospital (collectively, Signature). The policy provided coverage for claims (which the policy defined as the insured's receipt of a written demand for damages, money, or services) first made against Signature during the policy period. In this action for breach of contract and breach of the implied covenant of good faith and fair dealing, Signature contends that Lloyd's wrongfully denied coverage of a claim.

On the parties' cross-motions for summary judgment, the trial court concluded the claim was not made within the policy period and, therefore, was not covered under the policy. The trial court denied the motion by Signature, granted the motion by Lloyd's, and entered judgment for Lloyd's.

In this appeal from the judgment, Signature contends that coverage exists under the policy because the claim was received within the policy period. For the reasons that follow, we reject Signature's contentions and affirm.

## BACKGROUND

In 2007, Lloyd's provided Signature with a combined general liability and professional liability policy (policy) that covered Signature's operation and management of Aurora Las Encinas Hospital (hospital) from September 8, 2007, through September 8, 2008. The policy, which provided "claims made" coverage,[1] stated in relevant part:

---

[1] "Claims made policies were specifically developed to limit an insurer's risk by restricting coverage to the single policy in effect at the time a claim was asserted against the insured, *without regard to the timing of the damage or injury*, thus permitting the carrier to establish reserves without regard to possibilities of inflation, upward-spiraling jury awards, or enlargements of tort liability after the policy period. The insurance industry's introduction of 'claims made' policies into the area of comprehensive liability insurance itself attests to the industry's understanding that the standard occurrence-based [comprehensive general liability] policy provides coverage for injury or damage that may not be discovered or manifested until after expiration of the policy period. That

2

"COVERAGE IS ONLY PROVIDED FOR CLAIMS WHICH ARE . . . FIRST MADE AGAINST AN INSURED DURING THE POLICY PERIOD." The policy defined "claim" as "a written demand for Damages, money or services that is received by an Insured, including a Suit."

**I.      The August 2, 2008 Incident; the Expiration of the Policy; and the Denial of Coverage by Lloyd's**

While the policy was in effect, a 14-year-old female patient (minor) was allegedly raped by a male juvenile detainee who was also a patient at the hospital. The alleged incident occurred on August 2, 2008 (the August 2, 2008 incident).

After the policy expired on September 8, 2008, the minor provided Signature with written notice of intent to sue, which was dated January 26, 2009. The notice alleged that as a result of Signature's negligence, the minor was raped "by another patient who was not monitored." The notice further advised that the minor was seeking damages for physical injuries, medical expenses, lost earnings, impairment of future earnings, pain and suffering, emotional distress, and punitive damages. Signature received the notice on January 29, 2009.

On July 24, 2009, the minor filed her complaint against Signature. (Super. Ct. L.A. County, No. GC043433.) The complaint alleged that Signature was negligent in monitoring and supervising the juvenile detainee who committed the alleged rape.

On September 18, 2009, Lloyd's issued a denial of coverage letter, which stated that the minor's "claim was not made during the policy period or 30-day reporting window [following expiration of the policy period]." The letter explained that the minor's "claim was not made until January 29, 2009 when the insured received a Notice of Intent letter from [the minor's] attorney. Therefore, both the policy period and the 30-day reporting window had expired at the time the claim was first made" by the minor.

---

understanding is clearly reflected in the higher premiums that must be paid for occurrence-based coverage to offset the increased exposure. [Citation.]" (*Montrose Chemical Corp. v. Admiral Ins. Co*. (1995) 10 Cal.4th 645, 688-689, fn. omitted.)

On August 12, 2011, Lexington Insurance Company, which provided Signature with a professional liability and general liability policy for the subsequent period of September 8, 2008, through September 8, 2009, also denied coverage of the August 2, 2008 incident.[2]

## II.    The Present Action

On September 16, 2011, Signature filed the present action against Lloyd's for breach of the implied covenant of good faith and fair dealing, breach of contract, and declaratory relief.  Because Signature's coverage theory is based on an interpretation of the policy that requires additional information, we set forth (in parts A and B below) the relevant policy provisions and additional factual information, before discussing (in parts C and D below) the parties' cross-motions for summary judgment and the trial court's ruling.

Before turning to the policy, we briefly summarize Signature's coverage theory, which is as follows:  The policy's definition of a "claim" must be read in conjunction with the policy's notice provision.  The notice provision required the insured to give notice of every claim first received during the policy period as a result of a professional or general liability incident, by submitting the "Loss Advice Form" attached to the policy.  In the section titled "BASIS FOR REPORTING," the Loss Advice Form listed numerous items that could be marked by the insured, including (1) a request for medical records, or (2) an unexpected outcome.  In light of these two items on the Loss Advice Form, Signature inferred that Lloyd's was defining a claim to include a medical records request or an unexpected outcome.

---

[2]    In its denial of coverage letter, Lexington explained that the August 2, 2008 incident fell under the professional liability policy's exclusion of incidents that were known to the insured prior to the inception date of the policy (Sep. 8, 2008).  Lexington also explained that because the general liability policy provided coverage on an occurrence basis, the August 2, 2008 incident was not covered because it occurred prior to the policy's September 8, 2008 inception date.

*A.      Relevant Policy Provisions*

The policy stated in relevant part:  "THIS IS A CLAIMS MADE AND REPORTED POLICY.  COVERAGE IS ONLY PROVIDED FOR CLAIMS WHICH ARE BOTH:  (1) FIRST MADE AGAINST AN INSURED DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD; AND (2) REPORTED TO [LLOYD'S] AS SOON AS PRACTICABLE, BUT NOT MORE THAN 30 DAYS AFTER EXPIRATION OF THE POLICY PERIOD OR AFTER THE EXPIRATION OF ANY APPLICABLE EXTENDED REPORTING PERIOD.  COVERAGE IS ONLY PROVIDED FOR CLAIMS ARISING FROM PROFESSIONAL SERVICES[3] WHICH WERE RENDERED OR GENERAL LIABILITY INCIDENTS WHICH OCCURRED ON OR AFTER THE RETROACTIVE DATE STATED IN THE DECLARATIONS AND PRIOR TO THE EXPIRATION OF THE POLICY PERIOD."

The policy further stated in relevant part:  "As a condition precedent to the protection afforded by this Policy, the Named Insured shall, as soon as practicable (but not more than 30 days after the expiration of the Policy Period or after the expiration of any applicable extended reporting period), give written notice to the individual or entity referenced in the Declarations of every Claim first made against any Insured during the Policy Period (or any applicable extended reporting period) as a result of any Professional Liability Incident or General Liability Incident to which this Policy applies. Notice of such Claims should be sent using the attached Loss Advice Form."

The Loss Advice Form, which mentioned the word "incident" but did *not* mention the word "claim" anywhere on the form, was divided into five sections titled:

---

**3**      The policy defined "professional services" to mean "services performed by an Insured in the practice of the Named Insured's profession as stated in the Declarations, including but not limited to:  [¶]  A.  the furnishing of food or beverages in connection with such services and/or the handling, care or performance of any procedure on deceased human bodies, including, but not limited to, autopsies or organ removal; or [¶] B.  services by any person as a member of a formal accreditation, standards review or similar professional board or committee of the Named Insured."

"I.  INSURED DATA"; "II.  PATIENT DATA"; "III.  BASIS FOR REPORTING"; "IV.  INCIDENT NARRATIVE"; and "V.  INJURY/DAMAGES."  Section III, titled "BASIS FOR REPORTING," contained seven boxes that could be marked by the insured to report the following:  (1) "Unexpected outcome"; (2) "Patient/family grievance"; (3) "Medical record request (please enclose)"; (4) Written demand for compensation (please enclose)"; (5) Notice of Intent (please enclose)"; (6) "Lawsuit (please enclose) Date served: _____"; or (7) "Other (please specify) _____."

### B.     Additional Relevant Factual Information

The following events, which are relevant to Signature's coverage theory, occurred during the policy period:

### 1.     Signature Received Information Regarding the August 2, 2008 Incident From Orber, Its Independent Insurance Adjuster

By letters dated August 26, 2008, and September 3, 2008, Signature's independent insurance adjuster, Michael Orber of Michael A. Orber & Associates, Inc., provided Signature with information concerning the August 2, 2008 incident.  In the August 26, 2008 letter, Orber informed Signature of a media report that a "14 year old girl was raped by a 16 year old patient '. . . as hospital staffers and the suspect's probation officer slept nearby . . . .'"

### 2.     Signature Received a Request for Medical Records During the Policy Period

On August 28, 2008, Signature received a written request from a legal services company (Compex) to copy the minor's medical records.  The request was accompanied by an authorization allowing the minor's attorneys (Effres & Associates) to obtain her medical records.

6

3. Orber Forwarded His Letters and a Loss Advice Form Regarding the August 2, 2008 Incident to Lloyd's

On or about September 3, 2008, Orber forwarded to Lloyd's (1) his letters to Signature regarding the August 2, 2008 incident, and (2) a completed Loss Advice Form regarding the August 2, 2008 incident.

In section II of the Loss Advice Form, titled "PATIENT DATA," Signature provided information concerning the minor's name, date of birth, age, sex, occupation, date of treatment or incident, location of treatment or incident, and nature of treatment provided. In section III of the Loss Advice Form, titled BASIS FOR REPORTING," Signature checked only one box, which was marked "Other," and added the following handwritten notation: "Adol[escent] sexual activity."

4. Orber Notified Lloyd's of the Request for Medical Records

On either September 8, 2008 (according to Signature), or September 11, 2008 (according to Lloyd's), Orber notified Lloyd's that Signature had received a request to copy the minor's medical records.

C. *The Cross-motions for Summary Judgment*

The parties moved for summary judgment based on their conflicting views as to whether a claim was received during the policy period.

1. The Summary Judgment Motion by Lloyd's

In its motion for summary judgment, Lloyd's contended that the "only communication from [the minor] during the policy period was the Compex request to permit inspection and copying of medical records and billing. That was not [a] claim, under either the controlling case law or the policy wording." Lloyd's argued that the subsequent communications from the minor—the notice of intent to sue and the lawsuit—did not trigger coverage because they occurred after the policy had expired.

7

2.     The Summary Judgment Motion by Signature

In its motion for summary judgment, Signature argued that, based on its interpretation of the policy's provisions, the following communications constituted the reporting of a claim:  (1) on September 3 and 8, 2008, Orber provided Lloyd's with information regarding the alleged rape (including the newspaper account of the incident) and a Loss Advice Form concerning "adol[escent] sexual activity"; and (2) on September 8, 2008, Orber advised Lloyd's that Signature had received a request and authorization to copy the minor's medical records.

In its motion, Signature urged the court to infer that the Loss Advice Form had equated "incidents" with "claims."  Signature argued in relevant part:  "The Loss Advice Form attached to and made part of LLOYD'S policy ('Loss Advice Form'), sets forth the incidents that trigger the condition precedent to coverage, i.e., the need to report a '**CLAIM**.'  It states (at page 2) the *basis for reporting* a claim to include:  1.  ***unexpected outcome***;  2.  patient/family grievance;  3.  ***medical record request***;  4.  written demand for compensation;  5.  notice of intent;  6.  lawsuit;  7.  Other.  There is no distinction between, or any different significance given to, the various incidents that an insured must report to LLOYD'S.  A medical record request or an unexpected outcome is given the same 'triggering effect' as the filing of a lawsuit.  [¶]  Thus, it is reasonable for any insured to conclude that a medical record request, particularly one associated with an unexpected outcome such as the alleged rape of an admitted patient, is a demand for services or otherwise a claim as defined and described within LLOYD'S policy *because LLOYD'S identifies it as such*.  It is further reasonable for any insured to conclude that a medical record request and unexpected outcome constitute a claim because it is stated to be a condition precedent to coverage and included in the Loss Advice Form that LLOYD'S requires the insured use *to report claims.*"  (Internal record reference omitted.)

Based on its position that a claim regarding the August 2, 2008 incident had been made and reported within the policy period, Signature argued that the failure by Lloyd's to promptly respond and investigate the claim had resulted in a waiver of the right to deny coverage.  Signature argued in relevant part:  "LLOYD'S received notice of

8

SIGNATURE HEALTHCARE's medical records request and unexpected outcome on September 3 and 8, 2008.  As previously discussed, LLOYD'S policy does not provide for the reporting of 'potential claims.'  Thus, receipt of a medical records request and unexpected outcome, via the Loss Advice Form, which is the method provided by LLOYD'S for making claims, at the very least reasonably suggests a response is expected.  Despite receipt of a communication from an insured regarding a claim, LLOYD'S did not request additional information or conduct any sort of investigation, nor did LLOYD'S communicate anything to SIGNATURE HEALTHCARE regarding its coverage position [within the time] required by statute.  In fact, LLOYD'S did not communicate anything to SIGNATURE HEALTHCARE until September 16, 2009, when LLOYD'S sent its declination of coverage letter."  (Internal record references omitted.)

In support of the motion, Signature submitted the declaration of Laura Sanders, a senior vice president and general counsel for the hospital, which stated in relevant part: "It was my understanding that submitting the Medical Records Request and reporting an unexpected outcome to [Lloyd's], via the Loss Advice Form, constituted a claim under the Lloyd's policy.  [¶]  . . . [Lloyd's] did not request any additional information from [Signature] regarding the Medical Records Request or the unexpected outcome during the time period (September 3, 2008 to September 16, 2009) between [Signature's] submission of the Medical Records Request and unexpected outcome and [the] denial of coverage.  [¶]  . . . [Lloyd's] did not communicate with [Signature] regarding the Medical Records Request or the unexpected outcome during the time period (September 3, 2008 to September 16, 2009) between [Signature's] submission of the Medical Records Request and unexpected outcome and [the] denial of coverage."

### D.      *The Trial Court's Ruling*

The trial court found that Signature did not receive a claim—a written demand for damages, money, or services—during the policy period, and, therefore, the minor's claim

was not covered by the policy. In its order granting the motion for summary judgment by Lloyd's and denying the motion by Signature, the trial court stated in relevant part:

"These cross-motions for summary judgment concern contract interpretation, and present a legal issue that is appropriately resolved by way of summary judgment: Was a claim (1) made against plaintiff Las Encinas within the policy period, and (2) reported to defendant Lloyd's within the policy period or 30 days thereafter? Because the court decides the first question in the negative, the second part of the issue is moot.

"'Claim' is defined in the policy as 'a written demand for damages, money or services that is received by the insured, including a suit.' (Defendant's fact 7; plaintiffs do not dispute.) The policy requires that notice of claims be reported using an attached 'loss advice form.' (Defendant's fact 8; plaintiffs do not dispute.) Plaintiff received a request from a company called Compex for access to copy medical records. (Defendant's fact 12; plaintiffs do not dispute.)

"The request for medical records is not a claim as the term is defined in the policy, as it is not a written demand for damages, money or services. The court declines plaintiffs' invitation to find that the request for medical records is a claim for services. The request did not come from a third party claimant, and did not demand any service of plaintiffs; all that was required of plaintiffs was to permit access so that the legal copy service could copy its records.

"The court also declines plaintiffs' invitation to find that the loss advice form modified the policy's definition of claim, or rendered the definition ambiguous. The clear and precise definition of 'claim' in the definitions section of the policy governs interpretation of that term throughout the policy. Nothing in the loss advice form indicates otherwise, and the form does not even use the word 'claim.'

"Therefore, based on the above undisputed facts and the court's interpretation of the unambiguous contract terms, the court finds that no claim was received by plaintiffs within the policy period.

"Defendant's failure to treat plaintiffs' submission of the loss advice form as a claim (by communicating a decision regarding coverage), does not waive defendant's

10

right to subsequently deny coverage after a claim was made. As discussed above, no claim was made against plaintiffs during the policy period, and submission of the loss advice form does not alter that fact. Further, plaintiffs have offered no evidence that they relied to their detriment on defendant's failure to treat the loss advice form as a claim."

Based on the summary judgment ruling, the trial court entered judgment for Lloyd's. Signature timely appealed from the judgment.

## DISCUSSION

### I. Standard of Review

"A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) '"We apply a de novo standard of review to an order granting summary judgment when, on undisputed facts, the order is based on the interpretation or application of the terms of an insurance policy." [Citations.] [¶] In reviewing de novo a superior court's summary [judgment] order in a dispute over the interpretation of the provisions of a policy of insurance, the reviewing court applies settled rules governing the interpretation of insurance contracts.' (*Powerine Oil Co., Inc. v. Superior Court* (2005) 37 Cal.4th 377, 390.) The ordinary rules of contract interpretation apply to insurance contracts. (*Ibid*.) To protect the interests of the insured, coverage provisions are interpreted broadly, and exclusions are interpreted narrowly. (*MacKinnon v. Truck Ins. Exchange* (2003) 31 Cal.4th 635, 648.)" (*Stellar v. State Farm General Ins. Co*. (2007) 157 Cal.App.4th 1498, 1503.)

### II. There Was No Claim Made Within the Policy Period

Signature argues, as it did below, that the following communications constituted a claim first made within the policy period: (1) on September 3, 2008, Orber notified Lloyd's of the alleged rape, provided details from the newspaper account, and submitted a Loss Advice Form with information regarding the incident; and (2) on September 8,

2008, Orber informed Lloyd's of the request and authorization to copy the minor's medical records.

Signature argues that the above communications constituted a "claim" under the policy as stated in section III, "BASIS FOR REPORTING," of the Loss Advice Form. Signature asserts that section III of the Loss Advice Form defined "claim" to include unexpected outcomes and medical records requests. Signature contends that through Orber's September 3 and September 8 communications with Lloyd's, it complied with the Loss Advice Form's requirement to report a claim based on either an unexpected outcome (the alleged rape) or a medical records request.

The Loss Advice Form, however, does not use the word "claim" and does not state that a "medical record request" or an "unexpected outcome" constitutes a claim. By arguing that either a medical record request or an unexpected outcome is sufficient to constitute a claim, Signature is in essence seeking to obtain occurrence-based coverage for no additional premium. (See *Montrose Chemical Corp. v. Admiral Ins. Co.*, *supra*, 10 Cal.4th at p. 689 [higher premiums must be paid for occurrence-based coverage].) Signature's theory that a claim may be based solely on a medical record request or an unexpected outcome would nullify the policy's coverage provision, which conditions coverage on "a written demand for Damages, money or services that is received by an Insured, including a Suit." Signature's interpretation thus violates the fundamental principle of interpreting "contractual language in a manner which gives force and effect to every clause rather than to one which renders clauses nugatory. [Citation.]" (*Titan Corp. v. Aetna Casualty & Surety Co.* (1994) 22 Cal.App.4th 457, 474.)

In this case, the policy unambiguously provided coverage only for claims—written demands for damages, money, or services—that were first received by the insured within the policy period. Because the policy expressly stated that it was providing only claims-based coverage, which the California Supreme Court has recognized to be a less expensive form of coverage than occurrence-based coverage (see *Montrose Chemical*

12

*Corp. v. Admiral Ins. Co.*, *supra*, 10 Cal.4th at p. 689), it would be legally erroneous to construe the Loss Advice Form to provide occurrence-based coverage.[4]

### III. The Medical Records Request Was Not a Demand for Services

Signature contends that the request and authorization to copy the minor's medical records was a claim, because the request fell within the policy's definition of "*a written demand for . . . services.*" (Italics added.) Signature argues that because the parties knew of the alleged rape prior to the expiration of the policy period, they knew the request was not a simple medical records request, but was a "demand for services, pertaining to a rape."

We perceive at least two problems with this argument. First, where a medical records request is made through a professional copying service, Evidence Code section 1158 prohibits the medical provider from performing the copying. In light of this constraint, the contention that the request for medical records constituted a demand for services lacks merit. Second, there was no reference to the alleged rape in the authorization and request for medical records, which contained no demand for damages, money, or services. This omission undermines Signature's contention that the medical records request constituted a claim.

### IV. The Doctrines of Waiver and Estoppel Do Not Apply

Signature contends that upon receiving the Loss Advice Form, Lloyd's was obligated to communicate its position that the information did not constitute a claim. Signature argues that "[b]ecause the policy was about to expire and [Lloyd's] said nothing, its conduct is tantamount to an admission that . . . Signature had timely reported

---

[4] As previously mentioned, the boxes for medical records request and unexpected outcome were *not* marked on the Loss Advice Form that was submitted by the insured in this case. But even if those boxes had been marked, our legal analysis of the coverage provided by the policy—for claims that were first received by the insured within the policy period or 30-day reporting window following expiration of the policy period— would not change.

a claim and preserved coverage.  As a result, by its failure to act, [Lloyd's] has waived its right to later deny coverage."

For the reasons previously discussed, we conclude the contention lacks merit.  In light of our determination that a claim was not made during the policy period, it necessarily follows that Lloyd's had no obligation to accept or deny coverage.

## DISPOSITION

The judgment is affirmed.  Lloyd's is entitled to recover its costs on appeal.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

EDMON, J.*

We concur:

EPSTEIN, P. J.

WILLHITE, J.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.